ANCHOR CASUALTY CO. v.
McCALEB, et al.

No. 12726.

United States Court of Appeals,
Fifth Circuit.

Dec. 19, 1949.

Rehearing Denied Jan. 27, 1950.

A. D. Dyess, Houston, Texas, for appellant.

William C. Perry, Jr., Jack Binion, Harold A. Crawford, B. B. Patterson, Houston, Texas, for appellees.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

This action was instituted as a suit for a declaratory judgment pursuant to Section 274(d) of the Judicial Code, now Title 28 U.S.C.A., §§ 2201 and 2202, to secure a construction of certain portions of a liability policy issued by appellant to the appellees. The claims are for property damages caused by an oil-well explosion. Appellant is a corporation, duly organized under the laws of Minnesota, and has a permit to do business in Texas. The appellees are citizens of Texas; there is complete diversity of citizenship between the parties; and the amount involved is in excess of $3000, exclusive of interest and costs.

The material facts, which were submitted to the court without a jury, may be briefly stated as follows: On July 5, 1947, Nichols McCaleb, H. A. Potter, Sr., and M. G. Hansbro, became associated as joint venturers in a mining partnership formed for the purpose of drilling for oil under a lease jointly owned by them. Potter and Hansbro agreed to advance the money necessary to meet the drilling expenses, and McCaleb agreed to take charge of the actual drilling operations. All parties were to consult on such matters as determining the sand in which completion would be sought, the point at which to perforate, and questions of like importance. In furtherance of the enterprise, H. A. Potter, Jr., was appointed trustee to hold legal title to the lease, and was authorized to countersign checks drawn by McCaleb on the joint account. At the request of Potter, Sr., and on behalf of the three joint venturers, H. A. Potter, Jr., secured the issuance of the policy in controversy through appellant's authorized agent. Potter, Jr., disclosed to the agent all of the material facts with reference to the partnership and the joint venture with reference to the drilling of this well. After being fully advised of all the facts, said agent decided that the policy should be issued in McCaleb's name, because the permit to drill, which was issued by the Texas Railroad Commission, was in his name. The premiums on the policy were paid by Hansbro and H. A. Potter, Sr.

324

On March 17, 1948, while this policy was in full force and effect, and while the named insureds were attempting to accomplish their purpose, the oil well blew in with a tremendous gas pressure. It was a wild well for a period of approximately fifty hours before it was brought under control. During the time the well was out of control, considerable quantities of oil and gas distillate, sand, and mud, were blown into the air and carried by the wind onto the properties of landowners and tenants in the immediate area, resulting in claims by them for damages done to their property. At the time this action for a declaratory judgment was brought in the district court, four claims aggregating more than $35,000 had been filed in the state court against McCaleb, Potter, Sr., and Hansbro.

The appellant contends that, since the policy of insurance was issued to Nichols McCaleb in his individual capacity, and since the blowout occurred as a result of an operation by the partnership, neither McCaleb nor the partnership was protected by the policy. It further contends that all losses and damages were incidental to the blowout, and constituted but one accident, whereby its liability, if any, is limited to $5000 under coverage "B" of the policy. Appellees contend that when oil, sand, and mud, were blown onto the properties of various owners, additional accidents resulted to the property of each of them; that it was the intention of the parties, when the policy was issued, to cover all of the appellees; and that, if it did not, then it was issued in the name of Nichols McCaleb only because of a mutual mistake on the part of all parties to the contract. The court found that there had been such mutual mistake, and declared that the policy should be reformed so as to include the names of all partners as insureds. It found that each separate injury to the properties of the claimants constituted a separate accident within the terms of the policy, and that the liability of the appellant was limited to $5000 as to each of such several accidents, but that appellant's total liability did not exceed $25,000 for all damages to all parties arising out of said accidents; but it declared that the appellant was bound to defend all claims against appellees arising out of these accidents.

Insurance policies may be reformed to express the intentions of the parties where equity and justice demand it. This policy contained the name "Nichols McCaleb" following the phrase "Name of Insured." It also provided that the unqualified word "insured," wherever used therein, included not only the named insured "but also any partner, executive officer or director thereof while acting within the scope of his duties as such." From these facts we have no doubt that the parties intended for this policy to protect all of the partners in the joint venture of digging the well. The interest of each of them was fully stated to appellant's agent. The policy was issued in McCaleb's name, but H. A. Potter, Sr., and Hansbro paid the premiums. Appellant undoubtedly intended by this policy to afford the coverage and protection sought by appellees. The correct rule, as applied to the facts of this case, is very aptly stated in Volume 6, Couch, Cyclopedia of Insurance Law, at page 4997, which says: "Where a policy negotiated on behalf of a firm by an individual partner is made out, by mistake, in the name of the partner applying, instead of the partnership, a court of equity will decree its reformation so as to make it cover the partnership interest, even after loss."

Appellant's total liability for property damage under the policy is not measured by the limit of $5000 stated in the policy under coverage "B" for each accident, but by the limit of $25,000 stated for aggregate damage. The blowing-out of the well was not a single accident but a series of events, a catastrophe. Numerous accidents were the product of this motivating force and the wind as a supervening force. The eruptions continued intermittently for over two days; and during this period the wind changed from time to time, blowing mud and sand on different properties. The wording "each accident," as used in the policy, must be construed from the point of view of the person whose property was injured. In Bouvier's Law Dictionary, an accident is defined as an event which, in the circumstances, "is unusual and unexpected by the person to whom it happens." When

the separate property of each claimant was damaged, an accident occurred to the property of each owner. If one cause operates upon several at one time, it cannot be regarded as a single incident, but the injury to each individual is a separate accident. Couch, Cyclopedia of Insurance Law, Vol. 5, page 4136.

For fifty hours, through various shifts in the wind, the eruptions from this well were directed first against the property of one owner and then against another, which seems to us to have been precisely the kind of catastrophe against which the appellant inserted in the policy its limitation of $25,-000. We think the term "aggregate" was meant to serve as a total limit of damage to property of different persons from a closely related series of events, such as were evident in this case.

The policy involved here provides:

"It is further agreed that as respects insurance afforded by this policy the company shall * * * (b) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company. * * * The company agrees to pay the amounts incurred under Divisions (a), (b) and (c) of this section in addition to the applicable limit of liability of this policy."

Thus the policy states specifically that the expenses of defense will be paid by appellant in addition to the stated limit of liability. There are no provisions that give appellant the right to avoid this obligation by paying into court any definite sum of money. It is required to defend any "such suit" brought against the appellees, even if it is groundless, provided each complaint filed against them falls within the terms of the risks covered by the policy.

We find no reversible error in the record, and the judgment appealed from is

Affirmed.