### HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL 107

v.

### ROADWAY EXPRESS, INC.

Civ. A. No. 39524.

United States District Court
E. D. Pennsylvania.

Oct. 11, 1966.

Marshall J. Seidman, Seidman & Rome, Philadelphia, Pa., for plaintiff.

Harvey B. Levin, Lazarus & Levin, Philadelphia, Pa., for defendant.

OPINION

LUONGO, District Judge.

■ Plaintiff, Highway Truck Drivers and Helpers Local 107 (Union), instituted this suit[1] under Section 301(a) of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a), to recover from Roadway Express, Inc. (Employer) certain contributions alleged to be due and owing to Union's health and welfare, pension and life insurance funds (Benefit Funds) under the collective bargaining agreement (Agreement) between the parties. The matter is before me on Union's motion for summary judgment under Rule 56, Federal Rules of Civil Procedure; Employer has also asked me to enter judgment for it. While Employer has not filed a formal cross-motion for summary judgment, the matter may be considered as if such motion had been filed. Boeing Co. v. International Union,

[1]. Filed originally as an action for declaratory judgment, but amended without objection by defendant and with court approval to recover a money award. The court has jurisdiction under Section 301 (a) of suits by Unions on behalf of its members to recover pension and welfare payments. See discussion and citations of authority in United Steelworkers of America v. Copperweld Steel Co., 230 F. Supp. 383 (W.D.Pa.1964). See also United Construction Workers UMW v. Electro Chemical Engraving Co., 175 F. Supp. 54 (S.D.N.Y.1959).

UAW, 234 F.Supp. 404 (E.D.Pa.1964); American Auto. Ins. Co. v. Indemnity Ins. Co. of No. America, 108 F.Supp. 221 (E.D.Pa.1952), aff'd per curiam, 228 F. 2d 622 (3d Cir. 1956); Local 33, International Hod Carriers Union v. Mason Tenders District Council, 291 F.2d 496 (2d Cir. 1961).

The facts which appear of record may be briefly stated:

On June 23, 1965, Employer discharged approximately[2] 120 employees for participation in an unauthorized strike which lasted more than 24 hours. On or after July 16, 1965, grievances protesting the discharges and seeking reinstatement were filed by Union on behalf of all the discharged employees. Employer opposed the grievances on the ground that they were filed beyond the time provided in the Agreement. Employer's contention was ultimately sustained at an appropriate stage of the grievance procedure and the grievances were denied on October 28, 1965 as untimely filed. Employer made no contributions to the Benefit Funds for the discharged employees from and after the date of their discharge, June 23, 1965. In this suit Union seeks to recover contributions to the Benefit Funds for those employees for the period from the date of their discharge until the final denial of the grievances on October 28, 1965.

The only dispute here is over the interpretation of the contract between the parties. There are no material facts in issue and the matter is, therefore, ripe for disposition by summary judgment.

Union contends that it is entitled to the contributions because of the wording of Section 3 of Article 44 of the Agreement which provides as follows:

"If an employee is discharged or suspended *as provided for in this Article*, pending final disposition of said discharge or suspension, the Employer shall continue to make the required contribution for Health and Welfare, Pension and life insurance, if any." (Emphasis supplied.)

Employer contends that the quoted provision is, by its terms, limited to discharges under Article 44, that the discharges in this case were not pursuant to that Article, but were made instead pursuant to the power given to Employer by, and are subject to the terms of, Article 43 which contains no comparable provision for contributions to Benefit Funds following discharge.

It is clear from a review of the Agreement, particularly Articles 43 and 44, that the safeguards and benefits afforded Union members in Article 44 were not designed or intended for those discharged for participating in unauthorized strikes. The whole design of 44 is to protect an employee against unmerited discharge. It provides that discharge may be only for cause and upon notice to the employee and to Union; that except for enumerated[3] causes of an apparently more aggravated nature, the employee may not be discharged unless he has had a warning notice within the preceding nine months' period; and finally it sets out in detail the procedure for appeal from discharge, suspension or warning notice. If Employer's action in discharging or suspending an employee is held on appeal to have been unjust, there is provision for reinstatement with an award of full, partial or no back pay. It is in that context that Employer and Union agreed that so long as the employee's employment status remained in doubt, i. e. until "final disposition" of the discharge or suspension, and regardless of the ultimate outcome, whether employee was reinstated or not, Employer was nevertheless to make contributions to the Benefit Funds.

---

**2.** There is a dispute as to the exact number. Plaintiff's complaint alleges 120, defendant's answer claims 118. For the purpose of deciding the question raised by the motion for summary judgment, the precise number is not material.

**3.** Calling an unauthorized strike; drinking during working hours; proven theft or dishonesty; unprovoked assault on Employer or on Employer's representative during working hours; carrying unauthorized passengers in Employer's vehicle.

Article 44 deals with the relationship of Employer to his employee, the individual Union member. Article 43 deals with the much broader subject of the relations between the contracting parties, Employer and Union. This Article, entitled "Grievance Machinery," expressly states the aim of the parties to be the avoidance of work stoppages or law suits as a means of resolving controversies except as a last resort; sets up an elaborate grievance procedure required to be first exhausted; provides for the designation by Union of the representative who will have the sole authority to act for Union in calling a strike or work stoppage; and relieves Union of liability for damages resulting from unauthorized strikes or work stoppages. For those members acting contrary to Union's commitment by participating in unauthorized strikes or stoppages, the consequences are quick and clear. In language of unquestioned clarity and finality, the parties provided, in part, in Article 43, Section 7:

" * * * it is specifically understood and agreed that the Employer during the first twenty-four (24) hour period of such unauthorized work stoppage shall have the sole and complete right of reasonable discipline short of discharge and such Union members shall not be entitled to or have any recourse to any other provisions of this Agreement. After the first twenty-four (24) hour period of such stoppage * * * the Employer shall have the sole and complete right to immediately discharge any Union member participating in any unauthorized * * * [work stoppage] and such Union members shall not be entitled to or have any recourse to any other provision of this Agreement."

There is no mistaking the intention of the parties as expressed in Article 43. Unauthorized work stoppages were condemned as striking at the very heart of the Agreement between Employer and Union. To discourage such stoppages the parties provided the dual penalties of immediate disciplinary action by Employer and the withholding of benefits and protections otherwise available to Union members under other terms of the Agreement. Employer's right is "sole and complete," the discharge contemplated is immediate and final. There is nothing tentative about the discharge, no period during which "final disposition" is "pending." Under such circumstances there was not the reason for the parties to provide for continuity of contributions "pending final disposition" as there was in Article 44. Indeed, it would have been contrary to the expressed intention of the parties if the severe economic sanction of immediate discharge had been tempered by requiring contributions to be made for the account and for the benefit of the transgressors. Nowhere in the Agreement do I find evidence of intent so to temper the penalty.

As a matter of law, under the terms of the Agreement between the parties, Union is not entitled to recover contributions to Benefit Funds for members participating in an unauthorized work stoppage for any period following the date of their discharge for such participation. Union's motion for summary judgment will, therefore, be denied and judgment will, instead, be entered in favor of Employer.