**ACandS, INC.**

**v.**

**The AETNA CASUALTY AND SURETY COMPANY and the Travelers Indemnity Company and the Travelers Insurance Company.**

**Civ. A. No. 80–1341.**

United States District Court,
E.D. Pennsylvania.

Nov. 25, 1983.

F.H. Griffin, Philadelphia, Pa., for plaintiff.

Robert Masterson, Norristown, Pa., Andrew Hecker, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Three divergent legal theories, each of which has been accepted by a different Circuit Court, are at bar for consideration. In chronological order, the Sixth Circuit has held that the obligations imposed upon insurance companies by the standard comprehensive general liability policy issued to asbestos manufacturers and installers is triggered by a claim that an asbestos victim was *exposed* to the insured's asbestos-containing products during the policy period. *Insurance Company of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1225 (6th Cir.1980), *clarified in part*, 657 F.2d 814, *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981) (hereinafter *Forty-Eight*). Thereafter, the District of Columbia Circuit held that coverage is triggered by a claim that a victim was either *exposed* to asbestos products, suffered *exposure in residence* [1] or *mani-*

---

1. Asbestos fibers, once embedded in lung tissue, frequently work a deleterious effect upon the victim. Once a disease process, such as asbestosis, has begun, it continues to damage the victim's lungs. Thus, an asbestosis victim who successfully avoids additional asbestos exposure nevertheless suffers from a continually worsening and debilitating disease process. The dam-

*fested* an asbestos-related disease during the policy period. *Keene Corp. v. Insurance Company of North America*, 667 F.2d 1034, 1047 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) (hereinafter *Keene*). Finally, the First Circuit concluded that coverage under the identical insurance policy is triggered by a claim that an asbestos disease has *manifested* itself during the policy period. *Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682 F.2d 12, 23 (1st Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983) (hereinafter *Eagle-Picher*). These theories as to when insurance coverage is triggered are referred to as the "exposure", "continuous trigger" and "manifestation" theories, respectively. Grimigliano, *The Calculus of Insurer Liability in Asbestos Related Litigation*, 23 Boston College L.Rev. 1141 (July 1982).

Currently at bar are the motions of plaintiff, ACandS, and defendant, Travelers, for partial summary judgment. Plaintiff argues that the *Keene* court properly decided the issues at bar and urges that we adopt its continuous trigger theory. Travelers, on the other hand, claims that the *Forty-Eight* court correctly decided the identical issue and that we should follow the Sixth Circuit's exposure theory. Finally, defendant, Aetna, believes that genuine issues of material fact exist and that summary disposition is, therefore, inappropriate.[2] Fed.R. Civ.P. 56(c).

■ We first consider and reject Aetna's contention that this matter is not ripe for summary judgment. The insurance contracts at bar, though ambiguous, do admit to a proper legal interpretation. Moreover, although the precise etiology of asbestos-related diseases is the subject of some dispute, "universal agreement" exists that excessive inhalation of asbestos fibers causes

disease. *Forty-Eight*, 633 F.2d at 1214. Indeed, Judge Giles viewed the factual predicate of the underlying suits as resting upon "simple, uncontroverted and indisputable facts". *Commercial Union Insurance Co. v. Pittsburgh Corning Co.*, 553 F.Supp. 425, 433 (E.D.Pa.1981).[3]

We must address questions of pleading practice and issue preclusion before considering the type of claim which triggers the obligations undertaken by Aetna and Travelers.

■ Defendants argue that plaintiff may not properly seek summary judgment under *Keene's* continuous trigger theory because the complaint prays for judgment pursuant to *Forty-Eight's* exposure theory. Specifically, the complaint requests a judgment declaring

[t]hat each policy of insurance issued by Aetna provides coverage for each and every asbestos-related claim and lawsuit in which there is an allegation of or proof of *exposure* to asbestos at any time during the policy period;

(emphasis added). Additionally, defendants point out that the *Keene* case was decided in October 1981 and that plaintiff has never sought to amend its complaint to include the *Keene* theory. Plaintiff, countering, essentially admits that the primary legal thrust of its initial pleading was directed toward an "exposure" theory. However, it points out that the original prayer for relief, which sought a declaration that the policies at bar be construed pursuant to an exposure theory, also prayed for "further relief" as the court deemed "just". Continuing, plaintiff contends that under the notice pleading provisions of the federal rules, this latter prayer for relief incorporates the *Keene* theory.

Plaintiff's prayer for relief clearly articulated a demand for judgment based upon an "exposure" theory. This does not, how-

---

age sustained after the initial exposure to the fibers is called "exposure in residence" as it describes the phenomenon of continued damage by fibers already "in residence" in the victim's lungs.

**2.** Numerous *amici* have urged adoption of the positions taken by the various parties.

**3.** In any event, the "details" of asbestos diseases and their development are "not relevant" to the issues at bar. *Keene*, 667 F.2d at 1038 n. 3.

ever, foreclose a motion for summary judgment based upon a different legal theory. Specifically, Fed.R.Civ.P. 54(c) authorizes entry of final judgment granting relief to which a party is "entitled" even though they failed to "demand[ ] such relief" in the complaint. In fact, a complaint's prayer for relief neither strictly defines nor necessarily limits the relief which plaintiff may ultimately obtain; rather, the prayer serves only to "illuminat[e]" plaintiff's substantive theory. *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 66, 99 S.Ct. 383, 387, 58 L.Ed.2d 292 (1978). Omissions contained therein are "not in and of themselves a barrier to redress of a meritorious claim". *Id.* Thus, it is error for a court to reject a claim merely because it was not pleaded clearly, particularly where, as here, the issue is "thoroughly briefed". *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 708, 714 (8th Cir.1979). *Accord, Shapiro v. Midwest Rubber Reclaiming Co.*, 626 F.2d 63, 69 (8th Cir.1980). Accordingly, plaintiff is not precluded from moving for judgment pursuant to *Keene's* continuous trigger theory even though it failed to specifically so plead in the complaint.

■ Plaintiff urges that application of collateral estoppel principles preclude Aetna and Travelers from relitigating the issues decided adversely to them in *Keene.*[4] We disagree. Application of either federal, *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 337–38 (5th Cir.1982), or state collateral estoppel rules, *Public Service Mutual Ins. Co. v. Cohen*, 616 F.2d 704, 708 (3d Cir.1980), yields similar results. Collateral estoppel may not be invoked un-

der federal law where the "judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant". *Parklane Housing Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). Likewise, Pennsylvania would bar issue preclusion where "inconsistent results have been obtained against a common defendant embroiled in multiple suits". *Amader v. Johns-Manville Corp.*, 541 F.Supp. 1384, 1385 (E.D.Pa.1982), interpreting, *In Re Estate of Ellis*, 460 Pa. 281, 287 n. 7, 333 A.2d 728 (1975).

In the case at bar, even if Travelers were a party to *Keene*, it also participated in *Commercial Union Ins. Co. v. Pittsburgh Corning Corp., supra*, and *Forty-Eight.* The holding of those cases, that coverage is triggered solely by exposure, is at variance with *Keene's* continuous trigger holding. Hence, *Keene* cannot support the application of collateral estoppel as to Travelers. Although Aetna has apparently failed to generate any verdicts which are inconsistent with *Keene*, we nevertheless conclude that issue preclusion as to it is also unwarranted. Specifically, given the differing views expressed by the appellate courts which have considered the issue, we conclude that application of collateral estoppel as to Aetna would be "unfair". *Parklane Hosiery Co. v. Shore*, 439 U.S. at 331, 99 S.Ct. at 651.

We now turn to an examination of the major appellate court cases which have considered the issue at bar.

■ Although the courts which have construed the language at bar[5] have

---

**4.** The reported decision in *Keene* fails to conclusively establish plaintiff's contention that Travelers participated in that litigation.

**5.** ACandS purchased general liability insurance coverage from Travelers from 1958 to 1963. In 1963, ACandS changed carriers and hired Aetna as its insurance company. Aetna's policies place it at risk from 1963 to 1981. During this entire period, 1958 to 1981, many workers were exposed to asbestos products which they assert have caused injury or death for which ACandS, among others, is responsible. Hence, ACandS has turned to its insurance companies seeking both assistance in defending against the suits

and indemnification for judgments and settlements.

The policies issued by Aetna and Travelers generally obligate them to indemnify plaintiff for "all sums" which ACandS becomes obligated to pay as damages because of bodily injury, sickness or disease, including death, caused by an accident or occurrence which results in injury during the policy period. The Travelers' policy defined "occurrence" as

(1) an accident; or

(2) continuous or repeated exposure to conditions which result in bodily injury, sickness [or] disease ... during the policy period.

reached different conclusions, each court relied upon basic principles of insurance law and contract construction. For example, all three courts recognized their obligation to subject the policies to a construction based upon their "ordinary meaning" so long as the language contained therein was "unambiguous". *Eagle-Picher*, 682 F.2d at 17; *Keene*, 667 F.2d at 1043; *Forty-Eight*, 633 F.2d at 1221 and 1223. Moreover, two of the three courts found the relevant contractual terms ambiguous. *Keene*, 667 F.2d at 1043; *Forty-Eight*, 633 F.2d at 1222. Importantly, where ambiguities are contained in an insurance policy, the Pennsylvania "rule" requires that they be construed in favor of the insured.[6] *Commercial Union Insurance Co. v. Pittsburgh Corning*, 553 F.Supp. at 428; *Brezan v. Prudential Insurance Co. of America*, 507 F.Supp. 962, 964 (E.D.Pa.1981). Notwithstanding this general uniformity of approach to the problem at bar, each court's analysis has yielded a different conclusion.

The reason for this seemingly anomalous result is that each court considered the case of a different asbestos company which had purchased liability insurance at a different stage in its asbestos product-line development. Each of the courts, however, subjected the policies to an interpretation designed to "promote coverage" and to fulfill the "dominant purpose of [providing] indemni[fication]". In a word, each court sought to "maximize[ ] coverage" for the insured.[7] *Eagle-Picher*, 682 F.2d at 17; *Keene*, 667 F.2d at 1041; *Forty-Eight*, 633 F.2d at 1223.

■ The insurance policies at bar are ambiguous in that they fail to precisely define the method by which coverage is triggered. For example, coverage is triggered in the policies issued by Travelers to ACandS upon an "occurrence" such as an "accident" or "continuous or repeated exposure to conditions which result in bodily injury, sickness [or] disease during the poli-

---

Subsequent policies issued from 1963–1969 by Aetna defined "occurrence" as

an accident or continuous repeated exposure to conditions which result in bodily injury, sickness, disease . . . during the policy period.

Aetna policies issued between 1969–1973 contain the following provision:

"occurrence" means an accident, including exposure to conditions, which results, during the policy period, in bodily injury.

The final series of Aetna policies, issued between 1973–1981 define "occurrence" as

an accident, including continuous repeated exposure to a condition which results in bodily injury.

Aetna's policies from 1969–1973 defined "bodily injury" as "bodily injury, sickness or disease sustained by any person". This definition was modified in subsequent Aetna policies, issued from 1973–1981, to include coverage for "sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom".

6. Contrary to Aetna's assertion, this rule is not altered by the fact that both the insurer and the insured are large corporations with relative parity in bargaining power. *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 553 F.Supp. at 428. Indeed, a "long and unbroken line of Pennsylvania precedents" mandates that ambiguous language in an insurance contract be construed against the insurer. This rule applies to

transactions involving "sophisticated commercial contractors" as well as those involving consumers. *Alexander & Alexander v. Rose*, 671 F.2d 771, 777 (3d Cir.1982).

7. Specifically, Eagle-Picher was uninsured prior to 1968 for damages which resulted from exposure to its asbestos-containing products. *Eagle-Picher*, 682 F.2d at 16. Thereafter, the company purchased comprehensive liability insurance. Because asbestos-related diseases have long latency periods, acceptance of the "exposure" theory would have effectively deprived Eagle-Picher of insurance. 682 F.2d at 23. Therefore, "in this case", the manifestation theory was most appropriate. 682 F.2d at 23.

*Forty-Eight* also considered how its ruling would affect the insured. Forty-Eight Insulations was uninsured prior to 1955 and thereafter purchased general liability coverage from a number of insurance companies. 633 F.2d at 1215. The Sixth Circuit's decision was bottomed, in part, upon its stated goal of "promoting coverage" 633 F.2d at 1212. The court, therefore, selected a construction of the policies "likely to leave the manufacturer insured" as opposed to one which "leaves the manufacturer uninsured for all practical purposes". 633 F.2d at 1222.

Finally, the *Keene* court evidenced solicitous treatment for the plaintiff and sought to insure that its "rights under the policies" would be "secure". 667 F.2d at 1046.

cy period",[8] "Bodily injury", the meaning of which was also subjected to subsequent modification, was originally defined as "bodily injury, sickness or disease sustained by any person". Later policies define the term as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom".

The lack of precision and the existence of ambiguities in the aforementioned terms are readily apparent. For example, the pernicious nature of asbestos is such that sub-clinical lung tissue insult can result shortly after inhalation. A policy construction which views this tissue insult as "bodily injury" makes sense. Therefore, Travelers' exposure trigger represents a rational interpretation of the insurance policy. *Forty-Eight,* 633 F.2d at 1212; *Commercial Union Insurance v. Pittsburgh Corning Corp.,* 553 F.Supp. at 434.[9]

However, other equally plausible constructions of the contract language also exist. As previously stated, coverage is triggered, *inter alia,* by "disease" which must result "during the policy period". Reasoning that sub-clinical tissue insult does not amount to "disease" in that it does not "impair[ ] the normal state of the living animal". *Eagle-Picher* held that the standard insurance policy is triggered only by a condition which is "manifest or active" during the policy period. *Eagle-Picher,* 682 F.2d at 19 and 20.

*Keene* reviewed these ambiguities and rejected the notion that any *single* event triggers the insured's obligation. It concluded that exposure, exposure in residence and manifestation all trigger coverage.

*Keene* reached its conclusion by reading the term "bodily injury" as defining "any part of the single injurious process that asbestos-related diseases entail". *Keene,* 667 F.2d at 1047. Importantly, *Keene* noted that its result was consonant with Pennsylvania law. *Keene,* 667 F.2d at 1041 n. 10. Consistent with this, it is not surprising that a Pennsylvania trial court recently adopted *Keene. See, Crown Cork & Seal Co., Inc. v. Aetna Casualty & Surety Co.,* No. 1292, September Term 1292 (Phil. CCP August 2, 1983); *Cf. Commissioner v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (Federal Courts interpreting state law should give "proper regard" to relevant rulings of lower state courts.)

As noted, *supra* at n. 7, the common thread which runs through all three cases is, in light of the contract language, the desire to maximize coverage for the insured. In order to remain faithful to this rule, we will follow *Keene.*[10]

ACandS also moves for summary judgment on the manner by which losses are allocated between insurance policies where more than one policy has been triggered. Specifically, plaintiff again urges that we follow *Keene* which held that an insurer's obligations, once triggered, require the insurer to indemnify the insured up to the policy limits subject only to "other insurance" clauses. 667 F.2d at 1048.

Travelers, cross-moving for summary judgment, seeks to prorate liability among all of the insurance companies which were on risk while the asbestos victim was exposed to asbestos products. This theory

---

**8.** This definition changed somewhat in later years. *Supra* at n. 5. The somewhat modified definition represents, for present purposes, a difference without a distinction.

**9.** *See also, Porter v. American Optical Corp.,* 641 F.2d 1128, 1145 (5th Cir.1981), *cert. denied sub nom., Aetna Casualty & Surety Co. v. Porter,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1982).

**10.** Aetna's assertion that *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.,* 676 F.2d 56 (3d Cir.1982), adopted the manifestation theory is incorrect. *Appalachian Insurance* took pains to limit its holding to the "type of case" at bar, one not "akin to the litigation involving coverage of defendants involved in the asbestos litigation". Indeed, the court refused to "even speculate ... how the principles applied in this case

was specifically adopted by *Forty-Eight*, 633 F.2d 1224–1226.[11]

▮ Resolution of this issue also turns upon the language of the insurance policies issued to ACandS. They obligate insurers to provide payment for "all sums" which the policyholder shall become legally liable to pay as a result of any triggering occurrence. Construed according to its plain meaning, the phrase "all sums" allows ACandS to look to each triggered insurance policy to provide full coverage[12] for the losses which it has suffered. This result will not, however, permit ACandS to obtain multiple recoveries for single losses. Neither will it require a single insurer to provide full coverage when multiple policies are triggered. Indeed, as *Keene* noted, the existence of the "other insurance" provision contained in each policy provides an appropriate method to allocate liability among the manufacturer's various insurers. The "other insurance" provision does not, however, permit either Aetna or Travelers to evade their primary duty of indemnifying ACandS. *Keene*, 667 F.2d at 1050. Without belaboring the point, we conclude that *Keene* correctly decided the issue at bar and we adopt its reasoning.

▮ The final issue which we consider is whether Aetna and Travelers retain the obligation to defend their insured, ACandS, even though the indemnification policy limits have been exhausted. Aetna and Travelers argue that their obligation to defend is discharged once coverage is exhausted. Some courts have so held. *See e.g., Lumbermen's Mutual Casualty Co. v. McCarthy*, 90 N.H. 320, 8 A.2d 750 (1939). Other courts disagree. *See e.g., Anchor Casualty Co. v. McCaleb*, 178 F.2d 322 (5th Cir. 1956).

Judge Giles, thoroughly considering both the *McCarthy* and *McCaleb* "lines" of cases, predicted that Pennsylvania would follow *McCaleb* and hold that insurers must continue to defend their insureds even after the exhaustion of policy limits. *Commercial Union Insurance Co. v. Pittsburgh Corning Corp.*, 553 F.Supp. at 429–32. *Accord, Simmons v. Jeffords*, 260 F.Supp. 641 (E.D.Pa.1966). His well-reasoned decision was grounded in Pennsylvania law and recognizes that the duty to defend is separate from, and broader than, the duty to indemnify. *Commercial Union Insurance Co. v. Pittsburgh Corning Corp.*, 553 F.Supp. at 430.

Judge Giles' decision is further supported by *Keene* which held that the insurer's duty to defend exceeds the obligation to indemnify. This former duty requires that Travelers and Aetna defend ACandS against all suits which "indicate[ ]" that ACandS "may" be liable for an injury. The duty to defend requires the insurance defendants to defend ACandS even against suits which are "groundless, false or fraudulent". *Keene*, 667 F.2d at 1050; *Accord, Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026, 1027–28 (9th Cir.1981); *United States Fidelity and Guarantee Co. v. Louis A. Roser, Inc.*, 585 F.2d 932, 936–37 (8th Cir.1978); *Liberty Mutual Ins. Co. v. Pacific Indemnity Co.*, 557 F.Supp. 986, 988 (W.D.Pa.1983); *Raymond Davis & Sons, Inc. v. Liberty Mutual Ins. Co.*, 467 F.Supp. 17, 18–19 (E.D.Pa.1979).

The issues which we have decided today have been referred to as "difficult" by one court and "impossible" by another. *See, Keene*, 667 F.2d at 1040 and *Forty-Eight*, 633 F.2d at 1226. Indeed, we agree with the *Forty-Eight* court that "no truly satisfactory solution" exists to the troubling issues at bar and that "[e]ach theory has its flaws and anomalies". 633 F.2d at 1226. We have, nevertheless, sought to properly resolve the issues at bar. Despite our ruling, we candidly remain convinced that the issues raised by the parties' cross-motions, and the growing conflict between

---

would apply, if at all, to cases of those types". *Id.* at 62 and 62 n. 14.

**11.** Defendant, Aetna, while not cross-moving for summary judgment opposes both ACandS and Travelers' motions.

**12.** "Full coverage" is subject, of course, to policy limits and deductible provisions.

the decided cases, will perplex both district and circuit courts until they are resolved by the ultimate appellate authority.

In order to facilitate and expedite such review, an appropriate order, pursuant to Fed.R.Civ.P. 54(b), shall issue granting ACandS' motion for partial summary judgment.

### ORDER

AND NOW, this 25th day of November, 1983 IT IS ORDERED that plaintiff, ACandS's motion for partial summary judgment is GRANTED, and the Court declares:

1. "Bodily injury" as used in the comprehensive general liability insurance policies to ACandS, Inc. issued by defendants, The Aetna Casualty and Surety Company (Aetna) and The Travelers Indemnity Company and The Travelers Insurance Company (collectively Travelers) means any part of the injurious process that asbestos-related diseases entail. With asbestos-related claims, inhalation exposure, exposure-in-residence and manifestation all trigger coverage under the policies. Each policy on the risk from the date of first exposure through the date of manifestation provides full coverage for ACandS's liability in accordance with its terms and Aetna and Travelers are obligated to provide a defense to ACandS under each such policy.

2. Each Aetna and Travelers policy in effect during any event or sequence of events which, pursuant to Paragraph 1 of this order, brings coverage under that policy into play is required to respond in full to ACandS's legal liability and defense costs according to its terms without any proration of that liability or those costs to ACandS, Inc.

3. For any given claim, each insurance policy on the risk at any time from first inhalation of asbestos fibers through exposure-in-residence and manifestation is required to defend the claim in full, and ACandS may designate the insurance company that will actually defend each case.

4. When more than one policy applies to any given claim, ACandS may designate the policy whose limits will apply in each case. ACandS may also designate the policy under which any given claim is to be defended, which may be the same as or different from the policy whose limits will apply.

5. Under the policies insuring ACandS issued by Travelers covering the period January 1, 1958 until January 1, 1963, and the policies issued by Aetna covering the period January 1, 1963 until January 1, 1968, the insurance companies have an unlimited duty to defend ACandS, and to pay for that defense, in any case in which the complaint alleges or reasonably could be construed to allege bodily injury, as declared in Paragraph 1 of this order, during those policy periods. That duty under these policies is not limited by or limited to the applicable limits of the insurer's liability under the policies.

IT IS FURTHER ORDERED that, there being "no just reason for delay" the Clerk shall enter an appropriate judgment pursuant to Fed.R.Civ.P. 54(b).