**COMMERCIAL UNION INSURANCE CO.**

v.

**PITTSBURGH CORNING, et al.**

**Civ. A. No. 81–2129.**

United States District Court,
E.D. Pennsylvania.

May 16, 1985.

James Lewis Griffith, Griffith & Burr, P.C., Philadelphia, Pa., for Commercial Union Ins. Co.

James J. Restivo, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Pittsburgh Corning Corp.

Dennis Jacobs, Simpson, Thacher & Bartlett, New York City, Wayne A. Schaible, Duane, Morris & Heckscher, Philadelphia, Pa., for Travelers Indem. Co.

Daniel P. Stefko, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for PPG Industries, Inc.

## MEMORANDUM

GILES, District Judge.

By order dated October 29, 1981 (filed November 2, 1981), and as explained by Memorandum of December 4, 1981, reported at 553 F.Supp. 425 (E.D.Pa.1981), this court held that The Travelers Indemnity Company ("Travelers") had a duty to continue to defend its insured, Pittsburgh Corning Corporation ("Pittsburgh Corning") in the thousands of asbestos-disease related lawsuits then pending. This duty existed despite exhaustion by settlements or other payments of the aggregate limits of the Travelers' policy of general liability insurance covering the period of 1962 through July, 1970. Commercial Union Insurance Company ("Commercial Union") had issued to Pittsburgh Corning excess umbrella policies covering that same period of time. The 1981 ruling did not otherwise clarify Travelers' duty to defend and did not purport to allocate the expense of defense between Travelers and the insured's excess insurance carrier, Commercial Union.

Travelers had contended that the duty to defend pending and future claims terminated immediately upon exhaustion of its aggregate policy limits and timely notice of exhaustion. Travelers took this position even though it meant abandoning the insured's defense in on-going litigation. The court rejected this limited view of the duty to defend, predicting that the Pennsylvania Supreme Court would follow the "continuation of defense" rationale set out in the line of cases beginning with *American Casualty Co. v. McCaleb*, 178 F.2d 322 (5th Cir. 1950). *See Commercial Union Insurance Co. v. Pittsburgh Corning Corp.*, 553 F.Supp. 425, 429 n. 11 (E.D.Pa.1981). In *McCaleb*, the Fifth Circuit, apparently applying the law of the state of Texas, held that in the absence of a policy provision limiting the defense obligation, an insurer could not avoid its defense obligation by simply paying into court a definite sum. The policy of insurance specifically stated that the expense of defense would be paid in addition to the state aggregate limits of liability. Moreover, it has been consistently held in this Commonwealth that the insurer has a duty to defend independent of the limitation on liability, absent unambiguous policy language to the contrary. *See Liberty Mutual Ins. Co. v. Pacific Indemnity Co.*, 557 F.Supp. 986, 988 (W.D.Pa. 1983) (and cases cited therein); *Simmons*

*v. Jeffords,* 260 F.Supp. 641, 642 (E.D.Pa. 1966) (and cases cited therein).

In this case, Travelers' defense cost obligation policy language was found to be ambiguous. In Pennsylvania, ambiguity is construed against the insurer. *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 587, 152 A.2d 484 (1959). This ambiguity has been conceded, at least implicitly, by Travelers through its own internal memoranda. In these memoranda it recognized the reasonableness of interpreting the policy language in question as obligating it to continue the defense of pending cases despite exhaustion of aggregate policy limits. *See* Brief of Insured, Pittsburgh Corning Corp., in Response to the Motion of Travelers Indemnity Co. for Partial Summary Judgment at 10–14 and Exhibits thereto. The most persuasive evidence of an ambiguity is Travelers' amendment of the language regarding its duty to defend in subsequently issued policies. The amended language specified that the "insurer shall not be obligated to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

This court has not held, contrary to the contentions of Pittsburgh Corning and Commercial Union, that Travelers has an unending duty to defend. More specifically, there has been no determination that after the exhaustion of aggregate policy limits, Travelers has a duty to defend non-pending litigation or future claims arising from asbestos exposures which occurred during the policy period.

Despite the court's ruling, Travelers declined to contribute to the defense of the insured's pending litigation. Commercial Union responded to Pittsburgh Corning's demands to defend and indemnify it by assuming the defense of the approximately 7,600 pending cases under a reservation of rights. Thereafter, the parties requested the court to hold in abeyance further ruling on all matters pending settlement negotiations on numerous issues in the case. These settlement discussions were diligent and prolonged but ultimately no agreement was reached.

On July 30, 1982, Travelers filed a Motion for Partial Summary Judgment Regarding Allocation of Costs of the Defense of Pittsburgh Corning Corporation. This court's December 4, 1981 decision did not preclude a later assignment of defense to the excess carrier; nor was there a decision as to the priority of defense obligations among insurers. The matter lay dormant until Travelers, in July 1984, filed a petition to withdraw without prejudice the motion it filed on July 30, 1982. The remaining parties opposed both the motion for partial summary judgment and the motion to withdraw and urged the court to decide the allocation issue, in effect, filing cross-motions for partial summary judgment. *See Highway Truck Drivers and Helpers Local 107 v. Roadway Express, Inc.,* 266 F.Supp. 868, 869–70 (E.D.Pa.1966), *aff'd,* 377 F.2d 552 (3d Cir.1967) (citations omitted). The insured sought a declaration that Travelers is fully responsible for the defense of all cases arising or which may arise from exposures during the period of the policy. Commercial Union, in its brief opposing Travelers' motion for partial summary judgment, sought a declaration that it has no responsibility under its excess policies for costs of defense that should have been borne by Travelers. The court has been pressed to render a final decision on the allocation of costs between the parties.[1] Oral arguments were held on February 25, 1985. The parties were given until March 1985 to file any supplemental brief. Each has done so.

In its motion for allocation of costs Travelers has urged that under the Commercial Union policy sections entitled "Liability," "Ultimate Net Loss," "Loss Payable" and

---

1. At oral argument, Travelers asked that it be permitted to withdraw its partial summary judgment motion and have the court decide the same issue later in Civil Action No. 84–3985. Because I considered the other parties' submissions cross-motions for partial summary judgment on the same issue in this case, I permitted Travelers to withdraw its motion but advised that I would now decide this crucial issue in this declaratory action.

"Assistance and Cooperation of the Insured," the excess carrier is liable for defense costs. A review of the cited policy language shows that Commercial Union is obligated for the payment of costs of defense in accordance with the terms of its respective policies. However, Commercial Union argues that each of the policies expressly conditions the commencement of any such obligation upon such expenses not being included in other "valid and collectible insurance." The "Ultimate Net Loss" section in each of its policies concludes with the sentence; "The company shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance." Commercial Union argues that because Travelers' duty to defend arises either under its explicit contractual obligations to the insured or as a matter of law there exists other "valid and collectible insurance" and, therefore, Commercial Union is not responsible for defense costs until Travelers' duty expires, if ever.

■ Travelers maintains that reading each policy as a whole plainly compels the conclusion that Commercial Union's duty to settle, pay judgments and defend against claims commenced with the exhaustion of the aggregate limits of liability under the policies of underlying insurance. For example, paragraph 7 of the Conditions sections of the Commercial Union policies begins "ASSISTANCE AND COOPERATION OF THE INSURED." It continues;

> With respect to any claim made, suit brought or proceeding instituted against the insured to which the policies of underlying insurance set forth in Item 3 of the Declarations will not apply because of the exhaustion of the aggregate limits of liability thereunder, if such claim, suit or proceeding is one which could result in liability of the company to indemnify the insured hereunder for damages, the company may, if it so elects, assume complete control of the investigation, negotiations, settlement and defense of any such claim, suit or proceeding against the insured. In the event the company

notifies the insured that it has so elected, the insured shall cooperate with the company. . . .

However, Travelers does not confront and address the fact that the Commercial Union policies condition any payment upon proof that such payments or costs are not included in other valid and collectible insurance. Travelers does not contend that an independent duty to defend is other than "valid and collectible insurance." This phrase is not ambiguous. I find that the duty to defend constitutes valid and collectible insurance. Since it has already been determined that Travelers had a duty to defend those claims pending when the policy limits were exhausted, as to these claims, there is valid and collectible insurance from Travelers. Therefore, Commercial Union's duty to pay for the cost of defense of claims against the insured does not start until the Travelers' duty to defend ends.

■ In *McCaleb, supra,* and progeny, the rationale for the independent duty to defend was to preclude the insurer from simply paying a definite sum into court or the policy limits and then abandoning the insured. It would seem that at the heart of the obligation to defend is the notion that at the time that the defense is undertaken, there exists either policy coverage or the possibility of policy coverage for the event, coupled with the possibility of some payment on behalf of the insured within the policy limits. *See Cadwallader v. New Amsterdam Casualty Co., supra.* Once the duty to defend attaches, I have predicted, it cannot be abandoned in Pennsylvania as an extension of existing case law and public policy. *Commercial Union Ins. Co. v. Pittsburgh Corning Corp., supra.* However, where the aggregate limits have been exhausted, the insured is on notice that as to new claims there is no monetary insurance coverage, or, in other words, no existing valid and collectible insurance. Under these circumstances, there is no duty to defend. While the duty to defend once undertaken is independent of any subsequent obligation to pay, it arises in the first instance only if there is or may be a contractual obligation to pay.

Thus, Travelers' duty to defend extends to all claims which were in litigation at the time of exhaustion of its aggregate limits of liability. The costs of that defense cannot be passed on to Commercial Union under the terms of its policies since the obligation to defend pending lawsuits was part of the Travelers' insurance coverage of the insured. Travelers' duty to defend, however, does not extend beyond that point to other claims asserted against the insured.

The insured's position that Travelers is responsible for the defense of claims arising from asbestos exposures during the period of coverage but asserted after the exhaustion of aggregate limits is untenable. By making this argument the insured, Pittsburgh Corning, does not seek protection under the terms of a subsisting policy but rather seeks a continuation of policy protections simply because a policy had once issued. Such an extention of protection cannot be afforded by this court. Consequently, the costs of defense of asbestos claims, which were not pending at the time of exhaustion of Travelers' aggregate limits of liability, became the obligations of the insured, and by operation of its excess policies, the obligation of Commercial Union within the limits of those policies.

Accordingly, the motion of Pittsburgh Corning for partial summary judgment is granted insofar as it sought assignment of the costs of defense of pending asbestos cases to Travelers and denied insofar as it argued for an unlimited defense obligation to all asbestos related claims arising during Travelers' policy periods.

An appropriate order follows.

### ORDER

AND NOW, this 16th day of May, 1985, consistent with the foregoing Memorandum, it is hereby ORDERED that the Motion of Pittsburgh Corning for Partial Summary Judgment Regarding Allocation of Costs of the Defense of Pittsburgh Corning Corporation is GRANTED in part and DENIED in part. It is further ORDERED that The Travelers Indemnity Company shall bear the costs of the defense of those asbestos exposure claims against its insured Pittsburgh Corning Corporation which were pending as lawsuits at the time the aggregate limits of the general liability policy covering the period 1962–1966 were exceeded.