## Maguire v. Ohio Casualty Insurance Co.

*Jefferson J. Shipman,* for plaintiffs.
*Timothy I. Mark,* for defendant Ohio Casualty Insurance Co.

DOWLING, *J.,* March 11, 1991—In his masterpiece of satiric drama, *The Trojan War Will Not Take Place,* the French dramatist Jean Giraudoux envisioned a frantic series of attempts by both Hector and Ulysses to avert the outbreak of the celebrated Homeric conflict. At one point, all seems lost when a Trojan reports that a Greek ship has presented its colors, as it passed Troy, in a manner usually used only when passing a cattle-ship. But as

the Trojans seethe over this insult to their honor, Hector quiets them by reinterpreting the gesture as a homage to Troy's fertility and agricultural productivity. However, this linguistic sleight-of-hand ultimately proves to be of no avail; and as the curtain falls on the outbreak of war, following the killing of a Trojan poet, the prophetess Cassandra intones ominously, "The Trojan poet is dead; and now the Greek poet will have his say."

There does indeed seem to be a limit to which even the most accomplished master of language can alter the meaning of a fixed gesture or text; and the case at bar is an indication that there are times when even the most accommodating reading of a passage will not allow for the interpretation sought by certain parties.

The instant case relates to an automobile accident which occurred on January 20, 1989. Plaintiff Mark J. Maguire was operating a vehicle owned by his father, plaintiff Thomas W. Maguire. The collision tragically took the life of the driver of the other vehicle, June Zart.

Thomas Maguire was insured through the Ohio Casualty Insurance Company (also known as West American Insurance Company). After a pair of civil actions was commenced in Dauphin County, plaintiffs to this action notified Ohio Casualty of the pendency of litigation and asked that it assume responsibility for their defense. Ohio Casualty had secured releases from five parties to this action and declared that, through its payments to these parties, it had exhausted the $100,000 policy limit, and was therefore excused from any further obligation to plaintiffs.[1]

---

1. The parties from whom Ohio Casualty had secured the releases were (1) the estate and wrongful death beneficiaries of June Zart; (2) the Odd Fellow's Home of Pennsylvania; (3) the

On August 1, 1990, plaintiffs initiated the current suit, seeking declaratory relief compelling Ohio Casualty to pay for the defense costs of the two suits pending against plaintiffs. On November 7, 1990, Ohio Casualty filed a motion for judgment on the pleadings, or, in the alternative, a motion for summary judgment.

The entire case centers on a particular passage from the policy held by Thomas Maguire at the time of the accident. It reads:

"We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. *In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. . . ."* (emphasis supplied)

No party to this case questions that Ohio Casualty's payments under the policy in question have reached the $100,000 limit. But it is plaintiffs' contention that the language of the above passage is ambiguous and must be so construed against the insurer so as to require Ohio Casualty to defend plaintiffs in the extant suits. Plaintiffs say in their brief: "It is submitted that a reasonable person, reading the first highlighted statement above, would interpret that to mean that in addition to, or following, exhaustion of the policy limits the insurance company will pay all of the defense costs."

---

insurance carrier for one Yanko Resick; (4) Capital Area Transit; and (5) the Pennsylvania Department of Transportation. The pleadings currently before us are vague as to the degree and manner of the involvement in the accident of the second, third, and fourth parties named; but it hardly matters for our purposes-here, since $97,510 of the $100,000 went to the estate of June Zart.

Indeed, this assertion of plaintiffs might have been regarded as accurate—but only if one ignored the second highlighted statement, referring to the end of the insurer's duty to defend after the limit of liability had been exhausted. We find this language, taken in its totality, to be as unambiguous in its meaning and intent as any string of Anglo-Saxon words in our experience has proven to be; and it is a small but telling point that plaintiffs are unable to cite any case, statutory or Restatement authority to support their interpretation of this passage in the first of the two sections of their brief.

In the second portion of their argument—where plaintiffs seek to argue that there is a recognized legal duty on the part of an insurer to defend an insured, without regard to the exhaustion of policy limits—plaintiffs do cite several examples of case law; but not, in our view, in a fashion that supports the credibility of their argument. For example, plaintiffs cite the case of *American Contract Bridge v. Nationwide Mutual Fire Insurance Co.,* 752 F.2d 71 (3d Cir. 1985), for the proposition that "the insurer has the duty to indemnify and the separate duty to defend the insured in any lawsuit potentially covered by the policy." The case does, indeed, say that; but the key issue in *American Contract, supra,* was the question of whether a defense can be required of an insurer even where the allegations made against the insured are false and fraudulent, or where third-party allegations can act as the trigger for an insurer's defense responsibilities. In the case currently at bar no one, including Ohio Casualty, questions the *nature* of the insurer's defense responsibilities, only the *extent* of them after policy limits have been reached—a point that was not even in controversy in *American Contract.*

Similarly, plaintiffs invoke the precedent of *Simmons v. Jeffords,* 260 F.Supp. 641 (E.D. Pa. 1966), for the notion that a duty to defend does not terminate upon an exhaustion of policy limits. This is a fundamental misreading of the *Simmons* case, which held that an insurer, bound by a policy whose language promised defense services to the insured *without reference* to the exhaustion of policy limits,[2] could not avoid its responsibilities simply by offering to pay the amount of the policy into court, without also defending the action. This has nothing

---

2. The exact language of the *Simmons* policy was as follows:

"*Personal Liability Policy*—The insurance company whose name appears on the declarations page forming a part of this policy . . . agrees with the insured, named in the declarations made a part hereof, . . . in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy:

"I. *Coverage L—Personal Liability*—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, *and the company shall defend any suit against the insured alleging such bodily injury and property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient. . ..*

"II. *Supplementary Payments*—With respect to such insurance as is afforded by this policy for personal liability coverages the company shall pay, in addition to the applicable limit of liability:

"(a) all expenses incurred by the company, all costs taxed against the insured in any defended suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon. . .." (emphasis supplied)

to do with the scenario in the instant case, where the insurer has already defended the insureds in the past (to the point of securing releases from five parties to the action), up to the enumerated limits of the policy. It is one thing for a party to charge, as did the aggrieved insured in *Simmons,* that his carrier has, from the outset, left him naked on the field of legal battle, with neither sword nor squire to serve his turn. It is quite another to say, as do plaintiffs currently before us, that having been promised (and received) weapons of defense sufficient for a Thirty Years War, their protector is now bound to fight on in their behalf in a subsequent Hundred Years War, for which neither provision nor agreement was made in their written contract of insurance. This is a distortion of the principles set forth in *Simmons* which cannot be countenanced.

But by far the most telling point made in a case cited by plaintiffs—and it is, regrettably, a thrust that further undercuts their position, rather than shielding it—is contained in the text of *Commercial Union Insurance Co. v. Pittsburgh Corning Corp.,* 553 F.Supp. 425 (E.D. Pa. 1981). There, the court was also confronted with a clause providing for an insurer's responsibilities for the defense of an insured; and, because this fact situation is of striking relevance to the case now at bar, we shall quote it in its entirety:

"(b) Construction of Defense Clause

"Because the clause at issue in the defense motions is (from the insurer's perspective) at best ambiguous, the policy must be construed in the insured's favor. The ambiguity concerning the insurer's defense obligations is evident from both the policy language and the cases construing similar language.

"The relevant policy language reads:

" 'With respect to such insurance as is afforded by this policy, the company [Travelers] shall:

" '(a) defend any suit. . . .

" 'and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.'

"The insured maintains this language means that the insurer must defend 'any suit' which might give rise to the type of liability to which the policy is directed. The insurer interprets the clause 'such insurance as is afforded' to limit defense obligations both by type and amount of coverage. Both interpretations are reasonable and plausible. Therefore, on its face, the policy term must be found ambiguous. But see *McCarthy* cases cited in note 11, *infra*. *This finding of ambiguity is borne out by the insurance industry's later redrafting of policies to eliminate the problem posed by the defense motions. A typical newer policy says that the insurer 'shall not be obligated to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.'" Id.* at 429. (emphasis supplied)

It can hardly escape our notice that the remedial language cited by the *Commercial Union* court, in the passage italicized above, and which was intended as a corrective to the very problem discussed therein, is a virtual carbon copy of the qualifying phrases contained in the policy in the case at bar.[3]

---

3. Nor has it passed unremarked by us that the insurance policy in the case of *American Casualty Co. v. McCaleb,* 178 F.2d 322 (5th Cir. 1950), which fathered what footnote 11 in the *Commercial Union* case refers to as the "*McCaleb* line [of cases which] generally holds to some extent the insurer must defend although indemnification coverage may be exhausted," is also a virtual carbon copy of the passage quoted above from *Simmons, supra,* i.e. a text which lacks any of the explicit

522

Thus, to find in favor of plaintiffs in the instant matter, we would have to, at least by implication, set ourselves up in opposition to the findings of District Justice Giles in *Commercial Union, supra;* and plaintiffs before us now can hardly be heard to complain if we accept the validity of the legal reasoning contained in a case which they themselves have brought to our attention.

Accordingly, we enter the following

## ORDER

And now, March 11, 1991, we hereby dismiss plaintiffs' request for declaratory relief and deny their motion for summary judgment, and grant the motion of defendant Ohio Casualty Insurance for judgment on the pleadings.

restrictions based on policy limits which figure so prominently in the instant case.