# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2016AP299 |
| COMPLETE TITLE: | SECURA Insurance, A Mutual Company, |

SECURA Insurance, A Mutual Company,

          Plaintiff-Appellant-Cross-Respondent-Petitioner,

    v.

Lyme St. Croix Forest Company, LLC, Lyme St. Croix Land Company LLC, St. Croix Forest Products LLC, American Family Mutual Insurance Company, Safeco Insurance Company of America, State Farm Fire & Casualty Company, Wisconsin Mutual Insurance Company, Erie Insurance Group, Wilson Mutual Insurance Company, USAA Casualty Insurance Company, Western National Insurance Company p/k/a Western National Assurance Company, Auto-Owners Insurance Company, Farmers Insurance Exchange, Sentry Insurance Company, a mutual company, Jeremiah Nelson, Amy Nelson, Steigerwaldt Tree Farms, LLC, Steigerwaldt Land Services, Inc., LFF III Timber Holding, Frankenmuth Insurance Company, General Casualty Company of Wisconsin, Regent Insurance Company, Continental Western Insurance Company, Foremost Insurance Company of Grand Rapids Michigan, Foremost Property and Casualty Insurance Company, West Bend Mutual Insurance Company, American Family Home Insurance Company, Integrity Mutual Insurance Company,

          Defendants-Respondents,

Hanover Insurance Company,

          Defendant-Respondent-Cross-Appellant.

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 378 Wis. 2d 740, 905 N.W.2d 843
(2017 – unpublished)

| | |
|---|---|
| OPINION FILED: | October 30, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 5, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Douglas |
|   JUDGE: | Kelly J. Thimm |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |

NOT PARTICIPATING:

_____

ATTORNEYS:

For the plaintiff-appellant—cross-respondent-petitioner, there were briefs filed by *Patryk Silver* and *Borgelt*, *Powell*, *Peterson & Frauen*, *S.C.*, Milwaukee. There was an oral argument by *Patryk Silver*.

For the defendant-respondent-cross-appellant, there was a brief filed by *Douglas M. Raines*, *Heidi L. Vogt*, and *von Briesen & Roper*, *S.C.*, Milwaukee, with whom on the brief were *Timothy F. Casey*, *Patrick D. Crandell*, and *Collins Einhorn Farrell PC*, Southfield, Michigan.

For the defendants-respondents, there was a brief filed by *Nicholas D. Harken*, *Eugene M. LaFlamme*, and *McCoy Leavitt Laskey LLC*, Waukesha, with whom on the brief were *Erik J. Pless* and *Everson*, *Whitney*, *Everson & Brehm*, *S.C.*, Green Bay. There was an oral argument by *Eugene M. LaFlamme*.

An amicus curiae brief was filed on behalf of the Wisconsin Insurance Alliance by *Linda S. Schmidt*, *James A. Friedman*, and *Godfrey & Kahn*, *S.C.*, Madison.

No. 2016AP299
(L.C. No. 2014CV174 & 2014CV361)

STATE OF WISCONSIN        :        IN SUPREME COURT

SECURA Insurance, A Mutual Company,

       Plaintiff-Appellant-Cross-Respondent-
       Petitioner,

   v.

Lyme St. Croix Forest Company, LLC, Lyme St.
Croix Land Company LLC, St. Croix Forest
Products LLC, American Family Mutual Insurance
Company, Safeco Insurance Company of America,
State Farm Fire & Casualty Company, Wisconsin
Mutual Insurance Company, Erie Insurance Group,
Wilson Mutual Insurance Company, USAA Casualty
Insurance Company, Western National Insurance
Company p/k/a Western National Assurance
Company, Auto-Owners Insurance Company, Farmers
Insurance Exchange, Sentry Insurance Company, a
mutual company, Jeremiah Nelson, Amy Nelson,
Steigerwaldt Tree Farms, LLC, Steigerwaldt Land
Services, Inc., LFF III Timber Holding,
Frankenmuth Insurance Company, General Casualty
Company of Wisconsin, Regent Insurance Company,
Continental Western Insurance Company, Foremost
Insurance Company of Grand Rapids Michigan,
Foremost Property and Casualty Insurance
Company, West Bend Mutual Insurance Company,
American Family Home Insurance Company,
Integrity Mutual Insurance Company,

       Defendants-Respondents,

Hanover Insurance Company,

       Defendant-Respondent-Cross-Appellant.

**FILED**

**OCT 30, 2018**

Sheila T. Reiff
Clerk of Supreme Court

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 ANN WALSH BRADLEY, J. The petitioner, SECURA Insurance, A Mutual Company, seeks review of an unpublished, per curiam decision of the court of appeals affirming the circuit court's interlocutory order that determined the fire at issue constituted multiple occurrences instead of a single occurrence.[1] The court of appeals reasoned that under Secura's commercial general liability (CGL) policy there was an occurrence each time the fire spread to a new piece of real property and caused damage. Therefore, the court concluded that the $2 million aggregate limit applies rather than the $500,000 per-occurrence limit for property damage due to fire arising from logging and lumbering operations.

¶2 Secura asserts that the court of appeals erred, and that pursuant to the "cause theory," the fire constitutes a single occurrence. Despite the fact that the fire crossed several property lines, Secura contends it was a single, uninterrupted cause of the alleged damages.

---

[1] SECURA Ins. v. Lyme St. Croix Forest Co., LLC, No. 2016AP299, unpublished slip op. (Wis. Ct. App. Oct. 11, 2017) (affirming in part and reversing in part an order of circuit court for Douglas County, Kelly J. Thimm, Judge).

¶3   We conclude that the fire at issue constitutes a single occurrence pursuant to the CGL policy.  Consequently, the $500,000 per-occurrence limit for property damage applies.

¶4   Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings consistent with this opinion.

I

¶5   On May 16, 2013, a fire broke out on forest land owned by Lyme St. Croix Forest Company (Lyme St. Croix).  Known as the "Germann Road Fire," it burned 7,442 acres over the course of three days.  Real and personal property belonging to many individuals and businesses sustained damage.

¶6   The fire allegedly began in the cutting head of a piece of logging equipment known as a feller buncher, owned by Ray Duerr Logging, LLC (Duerr).  Flames quickly spread from dry grass to a pile of recently felled jack pine and subsequently into the surrounding forest.

¶7   At the time of the fire, Secura insured Duerr under both a CGL policy and an umbrella policy.  The CGL policy contained a $2 million general aggregate policy limit, and a $1 million per-occurrence limit.  However, the CGL policy also incorporated a "Logging and Lumbering Operations Endorsement." Pursuant to this endorsement, the per-occurrence policy limit is reduced to $500,000 for property damage "due to fire, arising from logging or lumbering operations . . . ."

¶8 Secura brought this declaratory judgment action to determine its coverage obligations with respect to Duerr.[2] Moving for declaratory judgment and partial summary judgment, Secura argued that the Germann Road Fire was a single occurrence. Consequently, it advanced that the $500,000 policy limit from the Logging and Lumbering Operations Endorsement was applicable, rather than the $2 million aggregate limit. Secura also contended that the umbrella policy afforded no coverage for the damage from the fire.

¶9 The circuit court rejected Secura's argument regarding the applicable policy limit. Relying on Wilson Mut. Ins. Co. v. Falk, 2014 WI 136, 360 Wis. 2d 67, 857 N.W.2d 156, the circuit court concluded that "although there was one uninterrupted cause of the fire, each 'seepage' of fire onto another's property constitute[d] a separate occurrence for purposes of the policy." However, the circuit court agreed with Secura that its umbrella policy provided no coverage for any damages.

¶10 Two parties sought leave to appeal the circuit court's order, and the court of appeals granted an interlocutory appeal.[3]

---

[2] Secura initially filed its complaint in Outagamie County. Venue was transferred to Douglas County, where the action was ultimately consolidated with a related suit filed by two property owners who alleged damage from the Germann Road Fire.

[3] See Wis. Stat. § 808.03(2) (2015-16) (explaining that the court of appeals will grant an interlocutory appeal if an appeal will "[m]aterially advance the termination of the litigation or clarify further proceedings in the litigation; [p]rotect the petitioner from substantial or irreparable injury; or [c]larify an issue of general importance in the administration of justice").

Secura appealed the circuit court's determination as to the CGL policy limit. Hanover Insurance Company (Hanover), Lyme St. Croix's insurer, challenged the circuit court's conclusion that the umbrella policy provided no coverage.

¶11 The court of appeals affirmed in part and reversed in part. It affirmed the circuit court's determination regarding the CGL policy, concluding that the circuit court properly applied the $2 million aggregate policy limit. SECURA Ins. v. Lyme St. Croix Forest Co., LLC, No. 2016AP299, unpublished slip op., ¶21 (Wis. Ct. App. Oct. 11, 2017). Like the circuit court, the court of appeals relied principally on Falk, 360 Wis. 2d 67, determining that "there was an 'occurrence' each time the fire—fueled and expanded by the consumption of new materials—spread to a new piece of real property and caused damage." SECURA Ins., No. 2016AP299, unpublished slip op., ¶17.

¶12 However, the court of appeals reversed the circuit court's determination that the umbrella policy provided no coverage.[4] Neither party, however, petitioned this court for

---

[4] Before the court of appeals, Hanover argued against the application of an exclusion in the umbrella policy stating that the liability policy did not apply to "'Property damage' arising out of injury or damage to or destruction of standing timber or timberlands, including the loss of use thereof, caused by fire and arising out of operations performed by or on behalf of any insured." SECURA Ins., No. 2016AP299, unpublished slip op., ¶22. The court of appeals reversed the circuit court's grant of summary judgment as to the umbrella policy, and remanded for a factual determination of what damages, if any, were sustained to an approximately 30 to 40 yard segment of real property that burned before the fire became a standing timber fire. Id., ¶29.

5

review of the portion of the court of appeals' decision regarding the umbrella policy. Accordingly, we do not address the issue.[5]

                                II

¶13 We are asked to review the determination of Secura's motions for declaratory and summary judgment, which requires us to interpret the parties' written insurance contract. Interpretation of an insurance contract presents a question of law. American Family Mut. Ins. Co. v. American Girl, Inc., 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65.

¶14 When a ruling on a motion for declaratory judgment depends on questions of law, we review the ruling independently of the determinations rendered by the circuit court and court of appeals. Gister v. American Family Mut. Ins. Co., 2012 WI 86, ¶8, 342 Wis. 2d 496, 818 N.W.2d 880.

¶15 Similarly, we review a summary judgment decision independently, applying the same methodology as the circuit court. Shugarts v. Mohr, 2018 WI 27, ¶17, 380 Wis. 2d 512, 909 N.W.2d 402. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

---

[5] See Novell v. Migliaccio, 2008 WI 44, ¶65, 309 Wis. 2d 132, 749 N.W.2d 544 (a party that fails to file a petition for cross-review does not preserve those issues for supreme court review); Priesler v. General Cas. Ins. Co., 2014 WI 135, ¶59, 360 Wis. 2d 129, 857 N.W.2d 136 (explaining that this court regularly "decline[s] to consider issues not raised in petitions for review").

III

¶16 This case presents the issue of whether the Germann Road Fire constitutes a single occurrence for purposes of the CGL policy, or whether there was instead a new occurrence each time the fire crossed a property line. Initially, we set forth the language of the CGL policy. Next, we adduce the principles of law that guide our analysis. Finally, we apply the language of the policy and those principles of law to the facts of this case.

A

¶17 We begin with the language of the insurance policy. Generally, we interpret a policy's terms as they would be understood from the perspective of a reasonable person in the position of the insured. Shugarts, 380 Wis. 2d 512, ¶20 (citing Frost ex rel. Anderson v. Whitbeck, 2002 WI 129, ¶20, 257 Wis. 2d 80, 654 N.W.2d 225). Specifically, in the context of determining the number of occurrences, we have framed this query in terms of the "average person." Welter v. Singer, 126 Wis. 2d 242, 251, 376 N.W.2d 84 (Ct. App. 1985); see also Falk, 360 Wis. 2d 67, ¶¶66-67; Plastics Eng'g Co. v. Liberty Mut. Ins. Co., 2009 WI 13, ¶38, 315 Wis. 2d 556, 759 N.W.2d 613.

¶18 The CGL policy covers "bodily injury" or "property damage" that is "caused by an 'occurrence' . . . ." An "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

7

¶19 As relevant here, the policy contains two monetary limits. First, there is a general aggregate limit of $2 million. This limit applies regardless of the number of covered occurrences. Second, the policy's "Logging and Lumbering Operations Endorsement" contains a $500,000 per-occurrence limit that applies "as respects 'property damage' due to fire, arising from logging or lumbering operations . . . ."

¶20 We must determine which of the two policy limits applies. If the Germann Road Fire is a single occurrence, then the lesser $500,000 limit applies. On the other hand, if there is a new occurrence each time the fire crosses a property line, as the court of appeals concluded, then the $2 million limit applies.

B

¶21 We turn next to adduce the principles of law that guide our analysis. In determining whether an event constitutes a single occurrence or multiple occurrences, we look to the "cause theory." Olsen v. Moore, 56 Wis. 2d 340, 349-51, 202 N.W.2d 236 (1972); Falk, 360 Wis. 2d 67, ¶66 (citing Plastics Eng'g Co., 315 Wis. 2d 556, ¶35). Pursuant to the cause theory, "where a single, uninterrupted cause results in all of the injuries and damage, there is but one 'accident' or 'occurrence.'" Welter, 126 Wis. 2d at 250. If "cause and result are 'so simultaneous or so closely linked in time and space as to be considered by the average person as one event,'" then only a single occurrence has taken place. Falk, 360 Wis. 2d 67, ¶66 (citing Welter, 126 Wis. 2d at 251). "If,

however, that cause is interrupted or replaced by another cause the chain of causation is broken and more than one accident or occurrence has taken place." Olsen, 56 Wis. 2d at 349.

¶22 By following the cause theory, Wisconsin courts disavow the opposing "effect theory." Olsen, 56 Wis. 2d at 351; see also Arnold P. Anderson, Anderson on Wisconsin Insurance Law § 2.66 (7th ed. 2015). The effect theory suggests that the wording "each accident" "must be construed from the point of view of the person whose property was injured." Anchor Cas. Co. v. McCaleb, 178 F.2d 322, 324 (5th Cir. 1949); see Olsen, 56 Wis. 2d at 347 (explaining that "[a] small number of jurisdictions subscribe to the 'effect theory' of liability").

¶23 Accordingly, pursuant to the effect theory, there is an occurrence when the separate property of each claimant is damaged. Anchor Cas. Co., 178 F.2d at 324-25. Under this theory, "[i]f one cause operates upon several at one time, it cannot be regarded as a single incident, but the injury to each individual is a separate accident." Id. at 325.

C

¶24 Finally, we apply the language of the policy and the above principles of law to this case. Both the circuit court and court of appeals purported to apply the cause theory. Each relied heavily on Plastics Eng'g Co. and Falk to reach the conclusion that the Germann Road Fire constituted multiple occurrences, with a new occurrence arising each time the fire crossed a property line. Those two cases, along with Welter, 126 Wis. 2d 242, are particularly instructive.

9

¶25 In Plastics Eng'g Co., the insured manufactured and sold asbestos-containing products for over twenty years. 315 Wis. 2d 556, ¶6. Multiple claimants sued the insured, asserting causes of action for bodily injury or wrongful death that arose from exposure to asbestos-containing products. Id. "In general, the claimants allege[d] that they were injured by their first exposure to asbestos, but their asbestos-related injuries did not manifest until long after their exposure to asbestos." Id. "The claimants' exposures allegedly occurred at different times and at different geographical locations." Id.

¶26 This court determined that multiple occurrences arose. Id., ¶40. We explained that "each individual claimant's injuries stem from the continued and repeated exposure to asbestos-containing products. Thus, under the policy language and the cause theory, each claimant's repeated exposure is one occurrence." Id., ¶39.

¶27 Arriving at this result, the Plastics Eng'g Co. court contrasted the facts of that case with those of Welter, 126 Wis. 2d 242. Plastics Eng'g Co., 315 Wis. 2d 556, ¶¶37-38. In Welter, a driver struck a bicyclist, stopped, and then drove forward, dragging the bicyclist beneath the car. 126 Wis. 2d at 246. The driver stopped again, then moved the car forward about a foot. Id. Finally, the driver got out of the car and a second driver got in, who attempted to free the bicyclist from under the car by backing up about ten feet. Id.

¶28 The court of appeals in Welter determined the entirety of this event to be a single occurrence. Id. at 245. Applying

10

the cause theory, it wrote that "[i]f cause and result are so simultaneous or so closely linked in time and space as to be considered by the average person as one event," there is only one occurrence. Id. at 251. "The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence. As long as the injuries stem from one proximate cause there is a single occurrence." Id. at 250-51 (quoting Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982)).

¶29 In contrast, the exposures to asbestos at issue in Plastics Eng'g Co. were not closely linked in either time or space. 315 Wis. 2d 556, ¶6. There, numerous individuals sustained injuries at varying geographic locations over a period of years. Id.

¶30 More recently, in Falk, the insured spread liquid cow manure on farm fields as fertilizer. 360 Wis. 2d 67, ¶5. Several neighbors alleged that the manure contaminated their wells. Id., ¶6.

¶31 Applying the cause theory, this court determined that "[b]ecause the occurrence under the . . . policy is well contamination, not manure application, there was an occurrence each time manure seeped into a unique well." Id., ¶67. "As such, an 'average person' would not consider the well contamination to be one event because manure had to seep into each individual well for the alleged contamination to occur." Id. "Further, because the manure had to seep into each

11

individual well, rather than seep into one well which 'fed' the other wells, it cannot be said the seepage was 'so simultaneous or so closely linked in time and space as to be considered by the average person as one event.'"  Id.

¶32 Here, the court of appeals concluded that Falk controlled.  It analogized the fire at issue to the seepage of manure that occurred in Falk.  The court of appeals' approach is unpersuasive for several reasons.

¶33 First, there are significant factual differences between a forest fire and the seepage of manure into a well. When determining whether there is one occurrence or multiple occurrences, we must take into account elements of time and geography.  Specifically, a single occurrence takes place if the cause and result were "so simultaneous or so closely linked in time and space as to be considered by the average person as one event . . . ."  Plastics Eng'g Co., 315 Wis. 2d 556, ¶38 (quoting Welter, 126 Wis. 2d at 251).

¶34 In Falk, the manure seeped over the course of an unspecified period of time.[6]  Conversely, the fire in this case burned continuously for three uninterrupted days.  A three-day fire in a discrete area caused by a single precipitating event would reasonably be considered by the average person to be one

---

[6] The Falk decision explains that the insured spread the manure in "early 2011" and the DNR notified the insured of well contamination complaints by letter dated May 23, 2011.  Wilson Mut. Ins. Co. v. Falk, 2014 WI 136, ¶¶5-6, 360 Wis. 2d 67, 857 N.W.2d 156.

12

event. Regardless of how many property lines the fire crossed, the damage closely follows the cause in both time and space.

¶35 Rather than being analogous to Falk, this case is more akin to Welter. In Welter, there may have been "multiple injuries" that were of "different magnitudes" over a short period of time, but that fact did not alter the court's conclusion that there was a single occurrence. See Welter, 126 Wis. 2d at 250 (citing Appalachian Ins. Co., 676 F.2d at 61). "As long as the injuries stem from one proximate cause there is a single occurrence." Id. at 250-51. The same is true here. In both cases, an average person would view the cause and result as a single event.

¶36 Second, the court of appeals' analysis, although purporting to apply the cause theory, in practice presents an application of the effect theory rejected by this court. According to the court of appeals, "the fire had to spread to each piece of real property for another property owner to suffer property damage due to the fire." SECURA Ins., No. 2016AP299, unpublished slip op., ¶21. By focusing not on the cause of the damage, but on the effect on individual property owners, the court of appeals strayed from this court's established methodology for determining the number of occurrences. See Olsen, 56 Wis. 2d at 349-51.

¶37 Third, the court's focus in Falk was primarily on the insurance policy's pollution exclusion, which the court determined to bar coverage, rather than the number of occurrences that took place. Falk, 360 Wis. 2d 67, ¶3. The

13

record in <u>Falk</u> lacked detail regarding the spreading of the manure and the eventual seepage. <u>Id.</u>, ¶¶5-6; <u>see</u> supra ¶32 n.6. Accordingly, the <u>Falk</u> court devoted only two paragraphs to the cause theory analysis. <u>See</u> <u>Falk</u>, 360 Wis. 2d 67, ¶¶66-67.

¶38 Finally, the court of appeals' decision appears to occasion arbitrary and unreasonable consequences. It is arbitrary to determine the number of occurrences solely from the number of owners whose property is damaged. Under the court of appeals' analysis, the fire could have burned exactly the same amount of land over exactly the same amount of time, but if all the land were owned by one person instead of several, the fire would constitute but one occurrence. Such a result would force the insurer to pay more in the event that the same amount of land burned is split among several owners.

¶39 Further, the court of appeals determined that "there was an 'occurrence' each time the fire——fueled and expanded by the consumption of new materials——spread to a new piece of real property and caused damage." <u>SECURA Ins.</u>, No. 2016AP299, unpublished slip op., ¶17. This premise appears to lead to unreasonable results. It is the nature of a fire to "fuel and expand by the consumption of new materials." If it is an occurrence each time a fire refuels and expands, then a fire, which is constantly refueling and expanding, will necessarily result in an unfathomably large number of occurrences regardless of how many property lines it crosses. A court's interpretation of an insurance policy should avoid unreasonable results.

14

Blasing v. Zurich Am. Ins. Co., 2014 WI 73, ¶43, 356 Wis. 2d 63, 850 N.W.2d 138.

¶40 Our conclusion that the fire here constitutes a single occurrence is buttressed by decisions from other jurisdictions likewise determining a fire destroying the property of multiple claimants to be a single occurrence. See Denham v. La Salle-Madison Hotel Co., 168 F.2d 576, 583 (7th Cir. 1948) (explaining that a fire that damaged property in numerous hotel rooms was a single occurrence); Barrett v. Iowa Nat'l Mut. Ins. Co., 264 F.2d 224, 226 (9th Cir. 1959) (concluding that there is "no merit" to the contention that a single fire that damaged property owned by seven different tenants in a building was seven accidents within the meaning of the policy); Tri-State Roofing Co. v. New Amsterdam Cas. Co., 139 F. Supp. 193, 198 (W.D. Pa. 1955) (determining, on rehearing, that a fire damaging eleven properties that began with an overturned pot of tar was a single occurrence); Travelers Indem. Co. v. New England Box Co., 157 A.2d 765, 769 (N.H. 1960) (concluding that a fire spreading to several properties is a single occurrence because "reasonable persons would regard [it] as one accident, no matter how many persons should become involved") (citation omitted).

¶41 In sum, we conclude that the Germann Road Fire constitutes a single occurrence pursuant to the CGL policy. Consequently, the $500,000 per-occurrence limit for property damage applies.

¶42 Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.