# COURT OF APPEALS
# DECISION
# DATED AND FILED

## November 19, 2019

**Sheila T. Reiff**
**Clerk of Court of Appeals**

# NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP1926**

Cir. Ct. No.  **2016CV26**

**STATE OF WISCONSIN**

## IN COURT OF APPEALS
## DISTRICT III

SUPERIOR WATER, LIGHT AND POWER COMPANY,

   PLAINTIFF-APPELLANT,

 V.

CERTAIN UNDERWRITERS AT LLOYDS, LONDON SUBSCRIBING TO POLICY NOS. K22700, CX2900 AND CX2901, ACCIDENT & CASUALTY INSURANCE COMPANY, ASSICURAZIONI GENERALI, THE DOMINION INSURANCE COMPANY LTD., EXCESS INSURANCE CO. LIMITED, NATIONAL CASUALTY COMPANY, NATIONAL CASUALTY COMPANY OF AMERICA LTD., STRONGHOLD INSURANCE COMPANY LTD., TUREGUM INSURANCE COMPANY, LTD., HELVETIA ACCIDENT SWISS INSURANCE CO., SWISS UNION GENERAL INSURANCE CO. LTD., LA CONCORDE, BRITISH RESERVE INSURANCE CO. LTD., ADRIATIC INSURANCE COMPANY (RIUNIONE ADRIATICA DI SICURTAS), EDINBURGH AND ROAD TRANSPORT G. AV, INCLUDING ALL SUCCESSOR COMPANIES,

   DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Douglas County: GEORGE L. GLONEK, Judge. *Reversed and cause remanded for further proceedings.*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This case concerns an insurance coverage dispute regarding three excess liability insurance policies issued to Superior Water, Light and Power Company (Superior Water) in 1970 by a host of insurance companies (collectively, the London Market Insurers (LMI)). In the circuit court, Superior Water sought a declaration that the policies obligated LMI to indemnify Superior Water for environmental contamination cleanup costs associated with a former manufactured gas plant site (the Site). The circuit court granted LMI's motion to dismiss after concluding that the term "one event," as used in the policies' definition of a coverage-triggering occurrence, referred solely to a leak or spill of contaminants during the policy period.

¶2 On appeal, Superior Water argues the circuit court erred by adopting a narrower definition of the term "one event" than is supported by the plain meaning of that term. We agree with Superior Water insomuch as we conclude that the policies' occurrence definition is ambiguous. Given the existing record and procedural posture of this case, we are unable to properly analyze and resolve the legal ramifications of our concluding that the subject language is ambiguous. Therefore, we remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3 The Site is a parcel of real property located in Douglas County. Superior Water operated a plant at the Site that produced carbureted water gas from 1889 until 1904. After production operations ceased, Superior Water used the Site as a storage facility for manufactured gas until 1959. No activities related to manufactured gas (either production or storage) have occurred at the Site since 1959.

¶4 In 2001, the Wisconsin Department of Natural Resources (DNR) claimed that Superior Water was potentially liable for contamination associated with the Site. Subsequent investigation revealed that the soil, sediment and groundwater "under and downgradient" of the Site contained polynuclear aromatic hydrocarbons (PAH) and volatile organic compounds (VOC). These chemicals are undisputedly associated with manufactured gas.

¶5 In 2004, Superior Water notified LMI of the DNR's claim. LMI had sold blanket excess liability insurance to Superior Water from 1942 until 1985. LMI acknowledged receipt of the notice and informed Superior Water it was generally reserving "all rights and defenses under the terms, conditions and limits of the polic(ies)."

¶6 Twelve years later, in 2016, Superior Water filed the complaint in the instant lawsuit. Superior Water sought a declaration that three policies LMI issued to Superior Water "for the period of 12/31/1969 to 12/31/1970" (the 1970 policies) obligated LMI to indemnify Superior Water for the cleanup costs

associated with the DNR's claim.[1]  As relevant here, all three policies included the following language:

> I.  COVERAGE —
>
> This policy is to indemnify:
>
> (a) [Superior Water] … for any and all sums which [it] shall be legally obligated to pay … to any person or persons … subject to the limitations hereinafter mentioned … by reason of damage to or destruction of property.
>
>  ….
>
> II.  LIMIT OF LIABILITY
>
> It is expressly agreed that [LMI] shall only be liable hereunder for the ultimate net loss as a result of any occurrence ….

The policies then defined the term "occurrence" to mean "one happening or series of happenings arising out of or caused by one event taking place during the term of this contract."  This is the disputed language in this appeal.

¶7     In its original complaint, Superior Water claimed that LMI was obligated to provide coverage for the cleanup costs associated with the DNR's claim because: (1) groundwater contamination is considered to be "damage to or destruction of" public property; and (2) the groundwater contamination in this case resulted from an occurrence—namely, the "continual, recurring damage to groundwater from contaminants associated with [the Site] since [1959.]" Superior Water subsequently amended its complaint to specify that "[i]n this case,

---

[1] According to Superior Water's amended complaint, "[r]ecent developments indicate that total environmental response costs associated with contamination allegedly arising from [the Site], including remedial investigation and potential remedial measure in nearby St. Louis River Bay, may range between $3 million and in excess of $7 million."

4

damage to waters of the State arose out of or was caused by one event (the continuous exposure of clean groundwater to chemical substances in the subsoil of [the Site]) taking place during [the 1970 policies'] periods."

¶8 LMI moved to dismiss Superior Water's amended complaint on the ground that it failed to state a claim upon which relief could be granted. In support, LMI argued that, pursuant to the 1970 policies' occurrence definition:

> [F]or property damage to be covered, a happening (the third-party property damage) must arise out of an event (something causing the release of contaminants) that takes place during the term of the contract. The only thing [Superior Water] alleges occurred during the 1969-1970 policy period is "the continuous exposure of clean groundwater to chemical substances in the subsoil of [Superior Water's] owned property." [Superior Water] has not alleged that any event caused release of new contaminants during the 1969 to 1970 term of the Policies.

¶9 Following a hearing, the circuit court granted LMI's motion. In a written memorandum, the court explained that the "plain definition" of an occurrence, as set forth in the 1970 policies, required that a "release of contaminants" take place during the term of the policies. As Superior Water's complaint failed to allege any such event, the court determined the complaint failed to state a claim upon which relief could be granted and dismissed the case. Superior Water now appeals.

## DISCUSSION

¶10 Superior Water contends the circuit court erred by granting LMI's motion to dismiss on the ground that the language of the 1970 policies unambiguously precluded coverage for Superior Water's claim. A motion to dismiss tests the legal sufficiency of the complaint. ***Data Key Partners v. Permira***

*Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. We accept the facts alleged in the complaint as true for purposes of our review. *Id.*, ¶18. Whether a complaint states a claim upon which relief can be granted is a question of law that we review independently. *Id.*, ¶17.

¶11     This case involves the interpretation of an insurance policy, which also presents a question of law that we review de novo. *See **Wilson Mut. Ins. Co. v. Falk***, 2014 WI 136, ¶20, 360 Wis. 2d 67, 857 N.W.2d 156. An insurance policy is a contract for insurance. ***Day v. Allstate Indem. Co.***, 2011 WI 24, ¶25, 332 Wis. 2d 571, 798 N.W.2d 199. As such, words and phrases in insurance policies are subject to the same rules of construction applicable to contracts generally. ***Acuity v. Chartis Specialty Ins. Co.***, 2015 WI 28, ¶23, 361 Wis. 2d 396, 861 N.W.2d 533.

¶12     The primary objective in construing the language of a contract is to ascertain and carry out the true intent of the parties. *Id.* To that end, if the policy language is clear on its face, we apply the policy's terms as written. ***Stubbe v. Guidant Mut. Ins. Co.***, 2002 WI App 203, ¶8, 257 Wis. 2d 401, 651 N.W.2d 318. When policy language is susceptible to more than one reasonable interpretation, however, the policy is ambiguous. ***Falk***, 360 Wis. 2d 67, ¶24 (citation omitted).

¶13     "If the language within the [insurance policy] is ambiguous, two … rules are applicable: (1) evidence extrinsic to the contract itself may be used to determine the parties' intent; and (2) ambiguous contracts are interpreted against the drafter." ***Coppins v. Allstate Indem. Co.***, 2014 WI App 125, ¶24, 359 Wis. 2d 179, 857 N.W.2d 896. The latter rule refers to the doctrine of

*contra proferentem.*[2]  *See* **Falk**, 360 Wis. 2d 67, ¶24 n.7.  If both parties to the insurance policy were involved in its drafting, however, then this doctrine cannot apply.  *See* **Kohler Co. v. Wixen**, 204 Wis. 2d 327, 339, 555 N.W.2d 640 (Ct. App. 1996) (declining to apply principles of *contra proferentem* when "[b]oth parties had input into the agreement before it was signed.").

¶14     Here, the parties agree that LMI is obligated to indemnify Superior Water under the 1970 policies for the environmental response costs associated with the DNR's contamination claim if a triggering "occurrence" took place during the policy period.[3]  The parties further agree that under the policies' occurrence definition, the phrase "one happening or series of happenings" would include groundwater contamination, which undisputedly has occurred.  Their dispute, therefore, concerns the latter half of the occurrence definition.

¶15     More specifically, the parties' primary disagreement centers on the meaning of the term "one event."  Superior Water advances a broad interpretation term, arguing that "[t]he common dictionary definition of an 'event' is all-encompassing.  It is simply 'something that happens:  OCCURRENCE.' MERRIAM-WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 788 (1965)."  Applying this broad interpretation, Superior Water contends that "one event" occurred within the meaning of the 1970 policies because "[i]n 1970, as in the periods before and after 1970, clean

---

[2] "*Contra proferentem* is Latin for 'against the offeror,' and means that when 'interpreting documents, ambiguities are to be construed unfavorably to the drafter.'"  **Wilson Mut. Ins. Co. v. Falk**, 2014 WI 136, ¶24 n.7, 360 Wis. 2d 67, 857 N.W.2d 156.

[3] Again, the 1970 policies define a triggering occurrence as "one happening or series of happenings arising out of or caused by one event taking place during the term of this contract."

groundwater continuously flowed from upgradient of Superior's property into the [contaminated] subsoil of Superior's property[.]" Because different groundwater was being exposed to the contaminants remaining on the Site (and thereby itself becoming contaminated), a new "event" occurred during the policy period.

¶16 LMI, in turn, argues that the term "one event" requires "evidence of a new release or spill during the policy period, and that the mere migration of previously released contamination is not sufficient to trigger the [1970] policies." Further, LMI asserts that

> [E]ven if the word "event" meant "anything that happened," as [Superior Water] improperly contends, by definition, it cannot mean the migration of previously released contaminants in the environment because such a reading would effectively write the word "event" out of the policy and every instance of damage would be its own cause onto itself. Such a reading is simply not reasonable under Wisconsin law. Because the "event" cannot be both the cause of and the resulting damage, there is no ambiguity.

¶17 We conclude that the 1970 policies' occurrence definition is reasonably susceptible to the interpretations advanced by both parties and, therefore, that portion of the policy is ambiguous. As an initial matter, we observe that throughout their briefing, both parties attempt to identify the singular "causative event" that led to groundwater contamination. In doing so, however, they give short shrift to the actual language used in the policies to define an occurrence—namely, "one happening or series of happenings *arising out of* or caused by one event taking place during the term of this contract." (Emphasis added.)

¶18 This oversight is significant because Wisconsin courts have long held that the "phrase 'arising out of' in an insurance policy is very broad, general,

and comprehensive and is ordinarily understood to mean originating from, growing out of, or flowing from." ***Trumpeter Devs., LLC v. Pierce Cty.***, 2004 WI App 107, ¶9, 272 Wis. 2d 829, 681 N.W.2d 269 (citing ***Garriguenc v. Love***, 67 Wis. 2d 130, 137, 226 N.W.2d 414 (1975)).  To that end, when the words "arising out of" appear in a liability insurance policy, they "require only that there be some causal relationship between the injury and the risk for which coverage is provided."  ***Lawver v. Boling***, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976).  Thus, Superior Water's complaint had to identify "one event taking place during" the policy period that bore some causal relationship to groundwater contamination in order to trigger coverage.

¶19     Turning to LMI's proposed interpretation of the term "one event," we agree that a leak, spill or release of contaminants in 1970 would constitute one event within the meaning of the 1970 policies' occurrence definition.  But LMI points to no language appearing within the policies—nor can we identify any—that limits the term "one event" to such an incident.

¶20     We are not at liberty to rewrite a policy by inserting language that the parties did not choose to include.  *See* ***Plastics Eng'g Co. v. Liberty Mut. Ins. Co.***, 2009 WI 13, ¶59, 315 Wis. 2d 556, 759 N.W.2d 613.  Consequently, we conclude that although LMI advances a reasonable interpretation of the term "one event," it has not shown that its interpretation is the only reasonable interpretation of the term.  Stated differently, we conclude LMI has not shown that the term "one event" unambiguously refers, in the context of the facts of this case, to a leak or spill of contaminants.

¶21     Rather, we agree with Superior Water that the 1970 policies' "occurrence" definition is susceptible to the broad interpretation it advances, and

that definition is therefore ambiguous. This conclusion necessarily follows from our determination that there is no language in the policies that limits the plain and ordinary meaning of the word "event"—i.e., something that happens.[4]

¶22     LMI's primary contention as to why the influx of clean groundwater into the Site's subsoil cannot be considered "one event" within the meaning of the policies is that an event "cannot be both the cause of and the resulting damage." Stated differently, LMI argues that the relevant damage cannot also be the cause of that damage.

¶23     We are not persuaded by this contention, largely because it is based on a false premise. In making this argument, LMI repeatedly mischaracterizes the nature of Superior Water's claim. Specifically, LMI argues that Superior Water is seeking coverage for the "passive migration" of previously released contaminants. But that is not what Superior Water's complaint alleges. As indicated above, Superior Water is alleging that, at some point prior to 1959, chemical substances associated with its manufactured gas plant operations were released into the Site's subsoil, after which those substances remained in the subsoil. Subsequently, clean groundwater flowed *into* the Site's subsoil, where it contacted those substances and became contaminated.

¶24     As such, the "one event" to which Superior Water points is not both the cause and result of the third-party property damage for which it now seeks

---

[4] We note that LMI does not develop any argument that Superior Water's reliance on a dictionary definition to supply this plain meaning of the word "event" is in error. Nor would such an argument have merit, as "[r]esort to a recognized dictionary may be had in order to discern the plain meaning" of words in an insurance policy. *Gillund v. Meridian Mut. Ins. Co.*, 2010 WI App 4, ¶18, 323 Wis. 2d 1, 778 N.W.2d 662.

coverage. Rather, the "one event" is a cause of the damage, because if the clean groundwater had not flowed into the Site's subsoil it would not have interacted with the chemical substances found therein and would not have become contaminated. Similarly, if the contaminants had been removed from the Site before more clean groundwater flowed into the Site during the 1970 policy period, that new (and clean) groundwater would not have been contaminated.

¶25    To be sure, contamination to Superior Water's own property was caused by the initial release of the chemical substances into the Site's subsoil. However, Superior Water was not entitled to coverage for the contamination to the Site caused by that event because LMI's policies provide coverage only for damage to a third-party's property.[5] It was not until clean groundwater subsequently migrated through the Site and interacted with the chemical substances in the Site's subsoil that a third-party's property was damaged, giving rise to Superior Water's claim for coverage. That influx of clean groundwater can be reasonably construed as an additional event. As explained above, the language of the policies does not require that the "one event" be the *sole* cause of the property damage for which the insured seeks coverage. Instead, the "one event" must bear only some causal relationship to the damage, per the policy's use of the "arising out of" language.

¶26    Our supreme court's recent decision in *SECURA Insurance v. Lyme St. Croix Forest Co., LLC*, 2018 WI 103, 384 Wis. 2d 282, 918 N.W.2d 885,

---

[5] As set forth above, the policies stated that their purpose was "to indemnify [Superior Water] for any and all sums which they shall be legally obligated to pay … to any person or persons … by reason of damage to or destruction of property." The parties agree that this language provides Superior Water coverage for third-party property damage, subject to the additional limitations set forth in the policies.

demonstrates the ambiguity inherent in the term "one event." In that case, a three-day fire burned over 7000 acres of forest land, damaging "[r]eal and personal property belonging to many individuals and businesses." *Id.*, ¶5. The fire allegedly began in the "cutting head" of a piece of logging equipment owned by the insured. *Id.*, ¶¶6-7.

¶27 At oral argument in this case, we asked counsel for both parties to identify, under the terms of the 1970s policies, what the "one event" would be that caused the third-party property damage at issue in *Lyme St. Croix*. Counsel for Superior Water argued that the fire was the "one event" that caused the damage, whereas counsel for LMI argued that the initial spark was the "one event." But the *Lyme St. Croix* court itself referred to *both* the spark and the fire as being events that ultimately bore a causal relationship to the third-party property damage, stating: "A three-day fire in a discrete area caused by a single precipitating *event* [i.e., the spark in the cutting head] would reasonably be considered by the average person to be *one event*." *Id.*, ¶34 (emphases added).

¶28 As in *Lyme St. Croix*, so too here. Both the initial spill or release of contaminants, as well as the influx of new groundwater into the Site's subsoil, were events that led to, and were necessary for, the third-party property damage to occur. And, again, because LMI points to no language in the 1970 policies that limits the definition of "one event" to—as relevant here—a leak or spill of contaminants, we conclude that both events may reasonably be interpreted to constitute an event within the meaning of those policies' occurrence definition.

¶29 Ordinarily, this conclusion would compel us to construe the policies against the insurer as the drafter of the policies. *See Falk*, 360 Wis. 2d 67, ¶24. However, LMI argues in its response brief that Superior Water—via its agent,

EBASCO Risk Management Consultants—may have either selected or authored the policies at issue. Thus, LMI argues the ambiguity should be construed against Superior Water under the doctrine of *contra proferentem*. As indicated, however, this appeal is before us on review of a grant of a motion to dismiss, and there has been no discovery on the factual issue of which party (or parties) drafted the policies. Accordingly, at this stage we cannot determine who (LMI, Superior Water via its agent, or both LMI and Superior Water) drafted the policies.[6] Therefore, we remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[6] As indicated above, the doctrine of *contra proferentem* cannot apply when both parties participated in the drafting of a document. *See **Kohler Co. v. Wixen***, 204 Wis. 2d 327, 339, 555 N.W.2d 640 (Ct. App. 1996). In such a case, a court must rely on extrinsic evidence to determine the true intent of the parties when they drafted the ambiguous policy language. *See **Coppins v. Allstate Indem. Co.***, 2014 WI App 125, ¶24, 359 Wis. 2d 179, 857 N.W.2d 896. The intent of the parties is a question of fact, which, like the identity of the policy drafter, we cannot resolve on the record before us. *See **Insurance Co. of N. Am. v. DEC Int'l, Inc.***, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998).