COURT OF APPEALS
DECISION
DATED AND FILED

July 27, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP496**

Cir. Ct. No.  2019CV342

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

ESTATE OF FINLEY OLSON, BY ITS SPECIAL ADMINISTRATOR, RACHEL OLSON, AND BY HER PARENTS, RACHEL OLSON AND WILLIAM OLSON, INDIVIDUALLY,

PLAINTIFFS-APPELLANTS,

V.

CARRIE HELLER AND TIMOTHY HELLER,

DEFENDANTS,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: KEVIN E. MARTENS, Judge. *Affirmed*.

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. The Estate of Finley Olson, by its special administrator Rachel Olson, and Rachel and William Olson individually (collectively, the Estate) appeal the circuit court order granting American Family Mutual Insurance Company (American Family) summary and declaratory judgment that its insureds, Carrie and Timothy Heller (the Hellers), did not have coverage under their insurance policy through American Family (the Policy) for the claims related to Finley Olson's death while in the care of the Hellers.  The Estate argues that the business pursuits exclusion in the Policy would not apply because the Hellers were not licensed day care providers and the insurance policy language is vague and ambiguous.  Additionally, the Estate contends that because Carrie was acquitted of criminal charges for running an unlicensed day care, issue preclusion bars the relitigation of whether Carrie was operating a home day care service.  Alternatively, the Estate asserts that if the Policy's business pursuits exclusion applies, then the non-business activities exception would also apply because Carrie was feeding her own child at the time of Finley Olson's accident. We reject all of the Estate's arguments and accordingly, we affirm.

## BACKGROUND

¶2      This case arises out of the death of Finley Olson while she was in the paid care of the Hellers.  Rachel and William Olson dropped off Finley, their six-month-old daughter, at the Hellers' house for child care at approximately 8:30 a.m. on January 13, 2016.  The Estate alleged in its civil complaint that Carrie "accidentally dropped Finley onto the hardwood floor" and "may have accidentally struck Finley Olson in the head with the highchair tray…."

According to the complaint, Finley's "eyes closed and her arms went limp." Carrie tried to revive Finley, and it "appeared as though Finley was not breathing." Carrie subsequently called her husband Timothy for help. The complaint does not state who called 911, but the Cudahy Fire Department Life Support Unit arrived on the scene and tended to Finley, who was then "transported to Children's Hospital of Wisconsin via ambulance." Finley died at the hospital.

¶3 Carrie was criminally charged after Finley's death; however, at trial in May 2017, the jury found her not guilty of first-degree reckless homicide and operating a day care center without a license contrary to WIS. STAT. § 48.65(1) (2019-20),[1] but found her guilty of obstructing an officer contrary to WIS. STAT. § 946.41(1). In January 2019, the Estate brought a civil suit against the Hellers alleging one count of negligence and one count of negligent supervision.

¶4 American Family provided defense counsel to the Hellers, but retained counsel to challenge the Hellers' coverage under their Policy for the Estate's claims, and deposed Carrie and Timothy with regard to those coverage issues. In Carrie's deposition, she testified that she required parents to sign a contract and had rules and guidelines including a sick child policy, a medication release form, and an inventory form to notify parents of supplies that needed to be restocked. She charged $30 per day per child, which was to be paid in cash on a weekly basis. Carrie advertised for child care clients on Craigslist, limited the number of children she would care for—in addition to her own three children—to

---

[1] The version of the statute in effect when Carrie was charged was amended in 2017 to the current version; however, the change is not relevant to this appeal.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

six; and set formal hours of operations from 7:00 a.m. until 5:00 p.m. Monday through Friday. Carrie also testified that she did not apply for a child care license with the state of Wisconsin, she did not incorporate her business into any type of business entity, and she did not report her income on her taxes. In Timothy's deposition, he testified that Carrie managed the advertising, interviewing, and billing for what he described as a "babysitting service." Timothy worked a full-time third shift job and when he was home, he would take the older children—the five- and six-year-olds—outside and help care for them.

¶5 American Family moved for declaratory judgment arguing that there was no coverage for the Estate's claims against the Hellers and for summary judgment and dismissal from the suit because American Family had no duty to defend or indemnify the Hellers as a matter of law. In January 2020, after reviewing briefing and hearing oral arguments, the circuit court declared and ordered that there was no coverage under the Policy for the Estate's claims and granted American Family's motions for declaratory and summary judgment and dismissed American Family with prejudice from the lawsuit. The Estate filed a motion for reconsideration, which the circuit court denied in March 2020 after briefing and oral argument.

¶6 This appeal follows. Additional relevant facts are included below.

## DISCUSSION

¶7 The Estate argues that the circuit court erred when it concluded that there was no coverage in the Policy for the Estate's claims against the Hellers and when it granted declaratory and summary judgment in favor of American Family. First, the Estate argues that the business pursuits exclusion in the Policy would not apply. Additionally, the Estate argues that Carrie's criminal acquittal of the

charge of operating a day care without a license means that American Family is estopped by issue preclusion from arguing that the Hellers were engaged in a business pursuit excluded by the Policy. Finally, the Estate argues that if the business pursuits exclusion does apply, then the non-business activities exception to the business exclusion would restore coverage. We reject the Estate's arguments.

¶8 This appeal reviews the circuit court order granting American Family's motion for declaratory judgment and summary judgment. The decision to grant or deny declaratory judgment is within the discretion of the circuit court. *See Jones v. Secura Ins. Co.*, 2002 WI 11, ¶19, 249 Wis. 2d 623, 638 N.W.2d 575. However, when the court's discretion "turns upon a question of law, we review the question" de novo. *Olson v. Farrar*, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. "We review a grant of summary judgment de novo, relying on the same methodology as the circuit court." *Estate of Sustache v. American Fam. Mut. Ins. Co.*, 2008 WI 87, ¶17, 311 Wis. 2d 548, 751 N.W.2d 845. It is proper for the circuit court to grant summary judgment where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶9 "Interpretation of an insurance contract presents a question of law," which we review de novo. *SECURA Ins. v. Lyme St. Croix Forest Co., LLC*, 2018 WI 103, ¶13, 384 Wis. 2d 282, 918 N.W.2d 885. Our procedure for insurance coverage determination follows three steps. *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65. "First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage." *Id.* Second, "[i]f the claim triggers the initial grant of coverage," we examine whether any policy

exclusions preclude coverage of the claim. *Id.* Third, if a particular exclusion applies, we examine "whether any exception to that exclusion reinstates coverage." *Id.*

¶10 American Family argues that the business pursuits exclusion precluded coverage for claims resulting from the Hellers' home day care service. No party disputes an initial grant of coverage, therefore, the focus of this appeal is the application of Policy exclusions and exceptions. We begin our examination with the language of the Policy:

> COVERAGE D – PERSONAL LIABILITY COVERAGE
>
> ….
>
> We will pay, up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy.
>
> ….
>
> EXCLUSIONS – SECTION II
>
> Coverage D – Personal liability and Coverage E – Medical Expense do not apply to:
>
> ….
>
> 4. Business. We will not cover bodily injury or property damage arising out of business pursuits or the rental or holding for rental of any part of any premises except:
>
> a. activities which are normally considered non-business

(Bold emphasis omitted). One final relevant section of the Policy is the definition of business:

> Business means any profit motivated full or part-time employment, trade, profession or occupation and including the use of any part of any premises for such purposes. The

6

> providing of home day care services to other than insureds, for which an insured receives monetary or other compensation for such services is also a business.

¶11 American Family argues that the Hellers provided regular day care services for which they received monetary compensation; therefore, the business exclusion would preclude coverage for Finley's death while in the Hellers' care. The Estate argues this is inaccurate for two reasons: first, because the phrase "home day care services" is undefined and ambiguous in the Policy, and second, because Carrie was acquitted of criminal charges related to operating a day care center without a license, therefore, the doctrine of issue preclusion bars this application. Finally, the Estate argues that the non-business activities exception would restore coverage under the Policy. We reject all of the Estate's arguments.

### A. Ambiguity in the Policy

¶12 The Estate argues that the exclusion for "home day care services" set forth in the Policy was vague and ambiguous and it was not specifically defined. We interpret the language of an insurance policy to give "its plain and ordinary meaning as understood by a reasonable person in the position of the insured." *Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶22, 338 Wis. 2d 761, 809 N.W.2d 529. If we determine language in the policy is ambiguous, that language is "construed against the insurer, the drafter of the policy." *Id.*, ¶23. The Estate contends the application of the business pursuits exclusion for the Hellers' babysitting is ambiguous and when the Policy language is construed against American Family, coverage would not be excluded.

¶13 American Family argues that the policy was not ambiguous because there was an exclusion for business pursuits, not a distinct exclusion for home day care services. The Policy states a business is "any profit motivated full or part-

time employment … including the use of any part of any premises for such purposes." American Family asserts that the plain meaning of those words encompasses the Hellers' work caring for Finley. American Family relies on Carrie's deposition testimony, which stated that Carrie provided care for up to six children (in addition to her own) at a time, required parents to sign a contract, which stated that the hours of operations were from 7:00 a.m. until 5:00 p.m. Monday through Friday, and received weekly cash payments for care. Timothy's deposition showed that he participated in caring for children who were not his own on a daily basis, and that while he did not participate in the management of the day care, he was aware that Carrie was paid for this child care. Therefore, American Family contends that the Hellers were providing child care in their home as a regular, full-time, profit-making endeavor, which would exclude coverage for claims resulting from these business pursuits.

¶14    The Estate attempts to establish that "home day care services" is ambiguous through multiple arguments, although none are availing. The Estate argues that while "business" is defined in the Policy, "home day care services" is not. The Estate further argues that the Policy does not address licensure for home day care services—it is undisputed that the Hellers were not licensed. The Estate argues that it is unclear what day care services would be excluded by the Policy, raising hypotheticals about sporadic babysitting or care for older children or adults. However, in assessing ambiguity, we consider "the text of the … exclusion clause in relation to the facts of this case." *See* ***Peace ex rel. Lerner v. Northwestern Nat'l Ins. Co.***, 228 Wis. 2d 106, 136, 596 N.W.2d 429 (1999). Here, the business exclusion applies to activity that is for profit, performed on a full-time or part-time basis, and performed in the home. We conclude that the undisputed facts indicate that the Hellers' home day care service satisfied these

three requirements. Therefore, it is proper to apply the business exclusion to the Estate's claims.

¶15 The Estate argues that granting summary judgment was a "drastic measure" and inappropriate in this case. *See **Lecus v. American Mut. Ins. Co. of Bos.**,* 81 Wis. 2d 183, 189, 260 N.W.2d 241 (1977). The Estate asserts that there is a genuine issue of material fact as to whether the Hellers were providing home day care services to which the business pursuits exclusion would apply.[2] However, it fails to offer material facts or reasonable inferences from the undisputed facts that disturb the material determination that the Hellers were operating a home day care service and that the Hellers' business activities satisfied the requirements for the business pursuits exclusion under the Policy. The Estate points to no facts or inferences to support that the Hellers were not engaged in regular child care, that the Hellers were not profit motivated or being paid for their work, or that the day care did not take place in their home. Accordingly, we conclude that the business pursuits exclusion applied and there was no coverage.

## B. Issue preclusion

¶16 The Estate argues that Carrie Heller was acquitted of running a licensed day care in the criminal case, meaning the issue has been litigated to a

---

[2] We interpret the Estate as appearing to concede the facts in the record are undisputed when it does not dispute any of the material facts, but instead argues multiple reasonable inferences exist. The Estate relies on our supreme court's holding "that where the undisputed facts lead to more than one reasonable inference about when discovery occurred, summary judgment is not proper." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶3, 305 Wis. 2d 538, 742 N.W.2d 294. The applicability of this holding is uncertain because there is no dispute over discovery of damage or a statutory deadline as was at issue in *Schmidt*.

9

final conclusion. Therefore, the Estate contends issue preclusion applies.[3] Issue preclusion bars the litigation of issues actually litigated and determined in a prior suit. *Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis. 2d 231, 235, 554 N.W.2d 232 (Ct. App. 1996). The Estate asserts that the question of whether Carrie ran a day care service was decided in her criminal trial when she was acquitted of the charge of operating an unlicensed day care. Therefore, the Estate contends that American Family should be estopped from arguing Carrie was operating a day care or from challenging that issue.[4] The Estate's position misstates that factual question answered by the jury. The jury was asked whether Carrie violated the licensure laws for child care centers, not whether she provided day care services. Therefore,

---

[3] We note that the Estate uses the terms collateral estoppel and res judicata; however, those terms have been replaced. Wisconsin adopted the "terms 'claim preclusion' and 'issue preclusion'" in 1995 in sync with the U.S. Supreme Court and the Restatement (Second) of Judgments. *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 549-50, 525 N.W.2d 723 (1995) (citation omitted). "The term claim preclusion replaces res judicata; the term issue preclusion replaces collateral estoppel." *Id.*

The Estate appears to argue both doctrines might apply, but its argument focuses on issue preclusion. The doctrine of "issue preclusion bars relitigation of issues of law or fact that have been litigated in a previous action." *Reuter v. Murphy*, 2000 WI App 276, ¶7, 240 Wis.2d 110, 622 N.W.2d 464. The rule "is based on the assumption that fairness to the defendant requires that at some point, litigation involving the particular controversy must end." *Lindas v. Cady (I)*, 175 Wis. 2d 270, 279, 499 N.W.2d 692 (Ct. App. 1993), *aff'd as modified*, 183 Wis. 2d 547, 515 N.W.2d 458 (1994).

Under the doctrine of claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceeding." *Lindas v. Cady (II)*, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994) (citation omitted). The elements of claim preclusion are identity between the parties, identity between the causes of actions, and a final judgment on the merits. *See Northern States*, 189 Wis. 2d at 551. Although there have been some cases of criminal convictions being invoked in claim preclusion, that doctrine is not applicable to this case. The charge of operating a day care without a license is not the same cause of action as the Estate brings here.

[4] Further, the Estate makes claims against both Timothy and Carrie in the operation of the day care business, and Carrie's criminal case has no bearing on Timothy's insurance coverage.

a finding that the State did not prove beyond a reasonable doubt that Carrie was required to license her business does not establish that Carrie did not operate a business providing day care within her home.

¶17    The Estate relies on *Crowall v. Heritage Mut. Ins. Co.*, 118 Wis. 2d 120, 122, 346 N.W.2d 327 (Ct. App. 1984), to argue that issue preclusion may be based on a criminal case.  There, an insured sued his insurance company for refusing to pay his personal injury claim after the insured was convicted of operating a motor vehicle under the influence of intoxicants.  *Id.* at 122-23.  This court concluded that the insured was estopped from relitigating his claim in the insurance context, in which he argued he was not driving.  *Id.* at 126-27.  The Estate's reliance on this case is misplaced.  The Estate asserts that Carrie's acquittal shows that she was not running a business, but *Crowall* also expressly states that "an acquittal cannot be asserted as collateral estoppel because it only means that the proof did not overcome all reasonable doubt of guilt."  *Id.* at 122 n.2.  While the insured in *Crowall* was convicted, here, Carrie was acquitted.

¶18    We conclude that the issue of whether the Hellers (or even Carrie alone) operated a home day care business has not been litigated and reduced to a judgment.  Therefore, issue preclusion does not apply to the determination of coverage under the Policy because the fundamental question of law has not been decided.

### C. Non-business activities exception

¶19    The Estate argues that the circuit court erred when it granted American Family summary judgment because the non-business activities exception to the exclusions in the Policy coverage would apply.  To understand this argument, we return to the record.  The Estate contends that Carrie was

11

feeding both her own child and Finley, who were each placed in high chairs. The Estate alleges that Carrie was cleaning her own child's high chair tray at the time of the accident. Therefore, the Estate contends Carrie would have been feeding her own child whether or not Finley was present as a day care client, and the act of cleaning the tray was a non-business activity.

¶20 The Estate argues that a babysitter taking care of her home or herself was not an action within a babysitter's function and therefore any claims in that scenario have coverage under the non-business activities exception, relying on several out-of-state cases. *See e.g.* **State Farm Fire & Cas. Co. v. Moore**, 103 Ill. App. 3d 250, 430 N.E.2d 641 (1981); **Crane v. State Farm Fire & Cas. Co.**, 5 Cal. 3d 112, 485 P.2d 1129 (1971). We decline to address these cases because they have no authority over this court and they do not reflect the approach utilized in Wisconsin. Under Wisconsin law, the non-business activities exception is construed "narrowly in favor of the insured and against the insurance company." *Vandenberg v. Continental Ins. Co.*, 2001 WI 85, ¶40, 244 Wis. 2d 802, 628 N.W.2d 876. "[I]n determining coverage, a court must examine the immediate context of the activity from which the claim arises." **Ruff v. Graziano**, 220 Wis. 2d 513, 518, 523, 583 N.W.2d 185 (Ct. App. 1998).

¶21 In **Ruff**, a day care provider took children in her paid care to a beach along with her own children; one of the children in her care disappeared and drowned. **Id.**, at 516.[5] We concluded that although "a trip to the beach may

---

[5] The Estate protests that **Ruff** is inapplicable because the day care provider there was licensed. This argument fails. The rationale to look at the context for the non-business activities and the business pursuits did not hinge on the child care provider's licensure. Here, we have determined that licensure is not material to the coverage determination.

ordinarily be non-business related … in this context it was directly related to [the babysitter's] business activities." *Id.* at 523. Because the accident occurred in the context of her day care business, the exception did not apply. *Id.* Similarly, the context for Finley's accident was mealtime in the paid care of Carrie and Timothy during their regular day care service provided within their house. Although Carrie was also feeding her daughter, which would be ordinarily a non-business activity, in this context, mealtime and the follow-up cleaning occurred as part of Carrie's day care services and within the operation of her business.

¶22    In *Vandenberg*, a home day care provider placed one of the children she was caring for in a child seat on the floor for a nap. *Id.*, 244 Wis. 2d 802, ¶8. While she was downstairs, her son unwittingly placed several pillows over the child's face and the child died from suffocation. *Id.* Under "the undisputed facts" of the *Vandenberg* case, our supreme court concluded that the exception clause was "ambiguous" because a reasonable person could believe coverage existed and, therefore, the court narrowly construed in favor of coverage. *Id.*, ¶42. The application was predicated on the babysitter being "negligent in supervision and control of her own child." *Id.*, ¶43. Our supreme court explained that the exception would not apply if the child had injured himself or if the babysitter's own negligence caused the injury. *Id.*, ¶45.

¶23    Although the language of the *Vandenberg* insurance contract is similar to the instant case, the facts are not, and accordingly, the exception is not applicable and the exclusion to coverage remains in force. Finley's accident was alleged to have happened because of Carrie's negligence, primarily. Although the Estate argued that Timothy was negligent in his supervision of Carrie, that claim is not the same as negligent supervision of a five-year-old child. Carrie's act of feeding her own child and wiping down high chair trays does not remove Finley's

accident from Carrie's own negligence. We conclude that the non-business activities exception does not apply to the undisputed facts of this case. Therefore, the business exclusion bars coverage.

## CONCLUSION

¶24    We conclude that the Policy exclusion for business pursuits applied to the Estate's claims against the Hellers and that the non-business activity exception did not apply. Therefore, a declaratory judgment that there was no coverage under the Policy was the correct statement of law. We uphold the circuit court's discretionary decision because it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 415, 320 N.W.2d 175 (1982).

¶25    Further, we conclude that the circuit court properly granted summary judgment in favor of American Family because there were no genuine issues of material fact and coverage is precluded by the business pursuits exclusion. Therefore, as a matter of law, American Family had no ongoing duty to defend or indemnify the Hellers, and were properly dismissed from the action. *See Sustache*, 311 Wis. 2d 548, ¶59. Accordingly, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14